## Case No. 7,920.

### KOHNE v. INSURANCE CO. OF NORTH AMERICA.

[1 Wash. C. C. 93.][1]

Circuit Court, D. Pennsylvania. April Term, 1804.

MARINE INSURANCE—AGREEMENT TO INSURE—POLICY NOT DELIVERED — INCOMPLETE STATEMENT OF VOYAGE—CONCEALMENT OF FACTS—FOREIGN REGULATIONS OF TRADE.

1. The agreement of insurance having been made while both parties were ignorant of the loss, and the policy having been completed and executed, although not delivered, it is valid and binding; and the plaintiff is entitled to recover, if there be no other valid objection.

[Cited in Franklin Fire Ins. Co. v. Colt, 20 Wall. (87 U. S.) 569.]

[Cited in Blanchard v. Waite. 28 Me. 57; Bragdon v. Appleton Mut. Life Ins. Co., 42 Me. 262; Brewer v. Chelsea Mut. Fire Ins. Co., 80 Mass. 208; Hoyt v. Mutual Ben. Life Ins. Co., 98 Mass. 543; Cooper v. Pacific Mut. Life Ins. Co., 7 Nev. 116; Fuller v. Madison Mut. Ins. Co., 36 Wis. 603; Cummings v. Webster, 43 Me. 193.]

2. The omission to mention that the voyage from a second port had commenced, at the time of the insurance, if the vessel was in good order at the time of her departure from the first port, does not seem material.

3. Whether the British regulations respecting the colonial trade be consistent with the law of nations or not, the effect of them, and the decisions of their courts upon them, are the same to neutrals, as if they were so.

4. If a concealment that the cargo insured had been shipped at a colonial port, and had not been landed in the United States, was material to the risk, the facts ought to have been disclosed.

5. If a foreign regulation be known only to the insurer, he must ask for information as to the facts; if known to the insured, he must disclose the same. Quere. If these regulations are not of general notoriety, whether assurer or assured is bound to disclose them, unless express notice of them is proved.

This was an action of trover for a policy of insurance. It was admitted on both sides, that if the agreement for insurance was perfected, and the plaintiff would have recovered upon the policy, that the want of it should produce no difficulty. The case was, that the plaintiff directed his agent to effect an insurance on goods on board the ship Gadsden, from Newport in Rhode Island, to Port Passage in Spain. The agent, on Saturday the 12th of October, 1799, applied to the president of the company, and left with

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

him the orders of insurance; which were, upon the cargo of the ship, at and from Newport to Port Passage; the ship an excellent one, copper bottomed, &c. &c. The agreement was made at —— per cent., for which a note was to be given with approved security. The agent left the office before the policy was filled up, but it was done in a few hours afterwards, of which the president gave notice to the agent; but mentioned that they had received information of the ship having been carried into Halifax. This information appeared in one of the newspapers published on Saturday; but was not known to either the agent or the company, when the agreement was entered into, and the policy executed. The agent called on Tuesday afterwards, to deliver the note, and receive the policy, but the company refused, having heard of the loss.

It appeared in evidence, that the Gadsden was the property of the plaintiff, a citizen of the United States, and left Charleston on the —— day of ——, on a voyage to Laguira, with passports from the Spanish consul at Charleston; that she took in a cargo of cocoa in bulk, tobacco, hides, &c. at Laguira and Porto Cabello, and returned to Charleston on the —— day of ——, bringing passports from the Spanish consul at Laguira. The ship entered at Charleston on the 27th day of May, 1799, and having landed part of her cargo, obtained a special permission from the collector not to land the balance; this, as the collector deposed, being customary where the cargo was intended to be re-exported for the benefit of drawback. The duties however upon the cargo, thus retained on board, were regularly bonded. On the 17th day of June, 1799, the ship took on board at Charleston a full cargo, and cleared out for Port Passage, but shortly after struck upon the bar and sustained some injury. It seems that she remained in that situation for some days, and preferring, in consequence of a protest of the seamen against proceeding on the voyage until the leak should be stopped, rather to go to Newport for the purpose of repairing, than returning to Charleston, she proceeded, and arrived at Newport on the 14th day of July, where she landed her cargo, and where she was completely repaired. On the 6th day of September. she took in her cargo, and on her voyage was captured, the 10th of September, by a British privateer, carried into Halifax, and the cargo brought from Laguira and Porto Cabello, and not landed at Charleston, was condemned. Amongst the papers found on board were, the two passports before mentioned, and a third from the Spanish consul at Charleston, given at the time she left that place for Spain, together with a certificate that the cargo was from Laguira for Spain. It was stated by one of the witnesses, that the cargo sustained a trifling injury, occasioned by the leak; and by another, that it was landed at Newport in complete order.

The objections made to the recovery were: (1) That the agreement for the insurance was inchoate, and the insurance company having heard of the loss before the policy was delivered, had a right to retract. (2) That there was a misrepresentation, sufficiently material to avoid the policy; because the voyage was represented as commencing at Newport, whereas in fact it had commenced at Charleston, and the case of Hodgson v. Richardson, 1 W. Bl. 463, was cited, and relied much upon. "At and from," means the time when the goods are put on board. Miller, Ins. 117, cited also on this point; 1 Marsh. Ins. 250. Knowledge of the agent binds the principal. 1 Term R. 12; 7 Term R. 162. (3) Concealment of the injury the vessel had sustained. This was material and should have been disclosed. Cases upon concealment. 3 Burrows, 1909. (4) The agent should have disclosed to the company that the goods had been brought from Laguira, and were not landed at Charleston. This was material to the risk, because by the principles asserted by the British nation, and by the instructions of the king in 1795, the cargoes of neutral vessels brought direct from any of the colonies to Europe, are made liable to confiscation. It was the duty of the agent to have disclosed the facts necessary for the insurers to know, to enable them to calculate the risk arising from that circumstance. Cases were cited to show that the principle asserted by the British government is consistent with the law of nations, and even if it be a regulation of that government, derogatory to the law of nations, still the disclosure of the fact was necessary; and that to avoid the charge of a direct trade, not only the duties should be paid in the country of the neutrals, but the cargo should be landed. 3 C. Rob. Adm. 78; 2 C. Rob. Adm. 186; 1 Marsh. Ins. 352; Case of the Emanuel, 1 C. Rob. Adm. 296; The Polly, 2 C. Rob. Adm. 361; Park, Ins. 195.

For the plaintiff it was answered: (1) That the contract was complete, and the policy executed, before notice of the loss. (2) That the misrepresentation, respecting the commencement of the voyage, was immaterial. Cited the case of Pine v. Pratt [unreported], supreme court of Pennsylvania. As to the case of Hodgson v. Richardson, the goods were never landed at Genoa, were perishable in their nature, and the insurers were liable to average. In this case, they were free of averages, were landed at Newport in good order, and taken on board in like order. (3) The vessel was in excellent order when she left Newport, and at the time the insurance was made, and therefore not necessary to disclose her having struck on the bar. (4) Neutral nations are not bound by the arbitrary decisions of the belligerent powers; and the instructions of the king respecting the trade of neutrals are not warranted by the law of nations. Cases cited: [Vasse v. Ball] 2 Dall. [2 U. S.] 274; 2 C.

Rob. Adm. 6, 12, 169, 301; 1 C. Rob. Adm. 249; Marsh. Ins. 317; 4 C. Rob. Adm. 100; 3 C. Rob. Adm. 72, 154, 188; 2 C. Rob. Adm. 84. The instructions in question were given in 1796, and the decisions of Sir William Scott are bottomed on them. They also cited on this point, 8 Term R. 434; 1 East, 663; Ld. Hawkesbury's Rep. on the conduct of Great Britain in respect to neutrals. But if the fact was material, it was the duty of the underwriter to ask for information. 2 Bos. & P. 210.

WASHINGTON, Circuit Justice (charging jury). The first objection to this action was not much relied upon by the defendant's counsel, and there is certainly nothing in it. There is no charge of unfairness on the part of the agent of the plaintiff; nor is it pretended that he knew of the loss on the 12th, when he waited upon the president of the insurance company. It appears that every thing was agreed upon; and although on account of the fever then in the city, he did not wait to receive the policy; yet it was immediately after he left the office filled up and signed by the president, and has been produced on the trial. The contract therefore was not inchoate, but perfected, before notice of the capture by either of the parties. The objections to the recovery relied upon are, a material misrepresentation, and a concealment of two facts material to the risk. The misrepresentation is stated to be in respect to the commencement of the voyage. It must be admitted, that there was a misrepresentation; but unless it was material to the risk, it is not sufficient to avoid the policy. I cannot perceive what consequence it was to the underwriters, to be informed whether the voyage commenced at Charleston or at Newport. The cargo was put on board at Newport in good order, and the insurers were free of average; which was not the case in Hodgson and Richardson. Besides, that case turned upon a usage proved on the trial, that if the insurance was effected in the middle of a voyage, it was necessary to disclose the circumstance. In this case no such usage has been proved.

The next objection is, concealment of the injury the vessel sustained from Charleston to Newport. The matter for the jury to decide on is, whether, at the time the risk commenced, the vessel deserved the character given of her. If the jury should be of opinion that she did, the accident that happened to her in her voyage from Charleston, does not, to the court, seem material.

The last and most important objection, remains to be considered. It is, that the defendant should have disclosed the importation from Laguira to Charleston, and the not landing of the cargo. A great deal has been said of the rights of neutral nations; and the principle contended for by the British government, has been pronounced repugnant to the laws of nations. I mean not to enter into the consideration of this question, because, whether the principle asserted by the British government and practised by its courts, be authorized or not by the laws of nations; yet the consequence to neutrals is the same. If they act improperly, the matter must be adjusted between that and our nation; but as to the individuals of our nation, they certainly incur a risk if they trade in contravention of the rule thus established, whether it be right or wrong.

The principle contended for is, that neutral nations shall not trade directly, in time of war, from the colonies of one of the belligerent powers in Europe, unless to the nation to which the neutral belongs, or carry on a trade from such colonies to the mother country, in time of war, which in time of peace is interdicted. The first branch of the question then is; if the concealment was material to the risk, was the plaintiff bound to disclose it, or was the insurer to ask for information? An insurance is a contract of indemnity, and the assurer agrees to stand in the place of the assured, and to take the risk upon himself. It is therefore necessary that the latter should possess the former with a knowledge of every fact with which he is acquainted, material to the risk, that he may know how to estimate the premium. If a foreign regulation, which may affect the risk, be known only to the insurer, he must ask for information. But if known also to the assured, it is his duty to state such facts as may be material, to enable the insurer to see the extent of the hazard to which such regulation exposes him. The absurdity, stated in argument, if the assured should be obliged to inform himself of all the various regulations of the different belligerent powers which may endanger his property, is not greater than to lay the same burden on the shoulders of the insurer. But in neither case does the principle apply, unless such regulations be public and generally known, or if not so, can be proved to have been known by one party and not by the other: in which case, the assurer, if he only knows of it, must take the risk upon himself; and if known only to the assured, it is a fraud if he does not disclose it.

The second branch of the question is, was the nature of the cargo, and the not landing it at Charleston, material to the risk; or in other words, was there a bona fide importation into Charleston, to avoid the charge of a direct trade from Laguira to Spain? This must depend upon the evidence. It is clear, that if the vessel had merely called at Charleston, the circumstance of stopping there would not have amounted to an importation into that place. The cases cited from Robinson's Reports, admit that paying duties and landing, are prima facie evidence of a bona fide importation; but these are only circumstances, which may be repelled by other evidence, showing that the importation was not bona fide; and I confess I can-

not see why the paying duties may not afford satisfactory evidence of a bona fide importation, if other circumstances concur to prove it so; though the case is certainly not so strong as if the cargo were landed. The evidence relied upon to prove that this was a direct trading, from a colony of Spain to the mother country, is certainly very strong. The passport to Laguira; the passport from thence to Charleston; the permission not to land, upon the ground that this is usually granted where the cargo is intended to be re-exported for benefit of drawback; the passport and certificate of the Spanish consul at Charleston, found amongst the papers, and describing the cargo as coming from Laguira, and intended for Spain; afford evidence of the original destination of the cargo, very difficult to be reconciled with the assertion of a bona fide importation into Charleston. If the jury, upon that evidence, are of opinion, that the calling at Charleston, and paying or bonding the duties, under all the circumstances of this case; were with a view to proceed on to Spain, or to land some of the cargo and take in other articles; it will be very difficult to maintain the argument, that the circumstances were immaterial to the risk, and in that case their verdict ought to be for the defendants.

The jury found for the plaintiff.

[The verdict in this case was set aside as contrary to evidence, and a new trial awarded. Case No. 7,921. Upon the new trial there was verdict and judgment for the defendant. Case No. 7,922.]