JACOB G. LORING & *al. versus* JEREMIAH PROCTOR.

The St. 1845, c. 172, " concerning judicial process and proceedings," does not authorize the transfer of an action from the District Court to the Supreme Judicial Court, for the decision of " legal points," upon an incidental or incipient question, which may arise ; but only when questions of law are found to have arisen therein, upon the decision of which the final determination of the cause, one way or the other, must ultimately depend.

Where the writ contains but one count, and that upon an alleged agreement to become insurer of a vessel, by a policy to be effected, it may be amended in the District Court, by leave of Court, by declaring, in a new count, upon a policy as actually made for the purpose. But the amendment must be allowed and made in the District Court before the action.can proceed to trial on such new count, and questions arising thereon be transferred from the District Court to this Court for decision.

A policy of insurance may be a valid instrument between the parties with out any formal delivery of the paper by one party to the other. And what the intentions of the parties may be, as to a writing prepared between them on the subject, with reference to its efficacy, is a question referable to a jury as matter of fact, and not altogether of law referable to the Court.

If the question in the District Court be a mixed one of law and fact, to be decided by the jury, under proper instructions from the Court as to the law, it cannot be transferred from that court to the Supreme Juidical Court for decision, under the St. 1845, c. 172, until the facts have been determined by the jury.

THIS case came into this Court from the District Court upon the following report : — _

" *District Court for the Western District.*
"CUMBERLAND COUNTY, MARCH TERM, 1846.

" JACOB G. LORING & *als. versus* JEREMIAH PROCTOR.

" ASSUMPSIT on a contract of insurance. The writ contains one count, setting out an agreement to insure. Before issue joined, the plaintiffs moved to amend by adding a second count, setting out a policy of insurance, as executed on the same contract, which was objected to by defendant.

" It is agreed, that if the amendment was within the discretion of the Court below, it shall be allowed.

" The original count and amendment are annexed to this report.

" Plea the general issue, which was joined.

" Upon the evidence given, *it was proved :* That a voluntary association of underwriters, of whom the defendant was one, was organized, and commenced taking risks, in Portland, in June, 1839. It was on an alleged contract with this company, that the case arose. The defendant was a Director at the time of the alleged contract. John W. Smith was another Director, and was President of the Board of Directors. He was also the Secretary and Treasurer of the company.

" The following were articles of the " Constitution and By-laws" of the company.

" ' Art. 5. All policies to be issued by this company shall, (except such variations as shall meet the case of this association,) be printed in the common form, and contain the names of the stockholders, and the Secretary shall have full authority, by a general power of attorney from all the associates, to use their names and sign for each of them ; and every policy, so signed, shall be binding on all the associates, the same as if each had placed his own signature to the policy, in proportion to the stock held by each member.

" ' Art. 7. All premiums for policies of a less sum than twenty dollars shall be paid when the risk is taken ; and for all premiums for risks of twenty dollars and over, the Secretary shall be at liberty to take a note for the same on such time as the Directors may determine.

" ' Art. 17. The Directors shall determine as to the value of any vessel offered for insurance, and in no case shall any vessel be insured for more than three fourths of such value.'

" The defendant signed the power of attorney specified in the 5th article, and was the holder of two shares of the nominal stock, making the proportion underwritten by him of any risk one twentieth part of the aggregate amount.

" *It was further proved,* That the company on the commencement of their business, inserted an advertisement in the city papers in the following terms : —

## " *Notice.*

" The PORTLAND MARINE INSURANCE COMPANY, a voluntary association, formed for the purpose of MARINE INSURANCE, is now organized and ready to receive proposals for insurance on vessels and merchandize on board the same, not exceeding two thousand dollars on any one risk. Office in the *Mariners' Church Building*, west end, up stairs.

" JOHN W. SMITH, President of
" the Board of Directors."

" Portland, June 20."

" In the printed portion of the policy used by the company is this clause : —

" ' And in case of any one or more of the insurers of the property by this or any other policy, should become insolvent, the loss, if any, occasioned thereby shall be borne solely by the insured, and none of the insurers shall be subject to any other loss, or demand, than what he would be liable to if no such insolvency should happen.'

" Also the usual clause of receipt of premium, as follows : —
" ' Confessing ourselves paid the consideration due unto us for this insurance, by the insured at and after the rate of ——.'

" The plaintiffs resided in North Yarmouth, and were not members of the association.

" The company kept a Proposition Book, or Book of applications for insurance, and a Duplicate Book.

" It was further proved, that John Yeaton was Director for the week, when Loring, one of the plaintiffs, applied for insurance on the schooner Oxford, of which they were sole owners. Smith, the President and Secretary, consulted with Yeaton on the application. Yeaton knew Loring, and knew the vessel. Smith had done business with Loring at the Custom House. They agreed to take $2000, at ten per cent. for one year, commencing on the 25th of October, 1839, lost or not lost. The application was on the 5th of November. After the consultation with Yeaton, Smith informed Loring that they had agreed to take the vessel, and Loring then signed the terms on the Proposition Book. No objection was made at the time, either by Yeaton or Smith, to Loring's want of authority to effect insurance for the other owners. Afterwards, on the

same day, Smith informed Yeaton that he had taken the Oxford. After signing the Proposition Book, Loring went away. Nothing was said at that time respecting a premium note. Subsequently Smith filled out and executed a policy and recorded it on the Duplicate Book. Four or five days after, Loring came to the Office and inquired for the policy, and was told that it was ready. Smith then filled up a joint note for the premium. Loring said he had not authority to sign the note for the other owners, and left the policy, saying he would take the note out to North Yarmouth, and get it signed and return it in a few days, and accordingly took the note. About the 6th of December, Smith met Loring on the wharf, and requested him to go up to the office and settle that business, meaning to give the note, &c. Loring replied, he would call another time. The loss became known in Portland, December 9th. On the 11th of December, Loring called at the office, mentioned the loss, offered the note, and requested the policy. Smith objected, and on the same day was directed by the Directors not to deliver it. Loring on the same day made a formal demand of the policy and tendered the note signed by the four plaintiffs. Smith asked, why the thing had not been completed before ? Loring replied, that it was not convenient to get the names before, and thought it hard the company should object, as he could not often meet the other owners except when they met on the Sabbath for worship.

"The note was produced, and identified at the trial as follows : —

"PORTLAND MARINE INSURANCE COMPANY.

"No. 32.　　　　　　　　　　Portland, October 25, 1839.

"For value received we promise to pay the Treasurer of the Portland Marine Insurance Company, or order, two hundred and one dollars, —— cents, at either of the Banks in this city, in fourteen months, with interest after.

$201, ——

"THAXTER PRINCE,
"PAUL PRINCE,
"LEVI BLANCHARD,
"J. G. LORING."

"Attest."

"On the same 11th day of December, Smith made a private memorandum relating to the affair, but before that day he

had made no memorandum, or entries, other than the regular papers and entries relating to the insurance. Before hearing of the loss, he had not in any manner canceled or altered any of the papers or records of the transaction ; but after the news of the loss arrived, he did make some such entries or canceling marks on the papers.

" It was further proved (subject to defendant's objection to such proof,) that the custom is uniform with insurance offices and agencies in Portland, to keep Proposition Books. Applicants sign the Proposition Book, and then leave the office considering themselves insured. The contract is regarded as finished at the time of signing the Book. As soon as convenient, the policy and note are made out. It would be impossible to execute and exchange papers at the time of concluding the contract. Very often premium notes lie in insurance offices unsigned, until they are due, and often till after the risk is terminated. Cases occur where the papers are not exchanged before losses happen, but the contracts are held good.

" It was further proved, (by two witnesses not members of the company,) that they had several times effected insurance with this company. The contract in each case was negotiated and concluded in the same manner as the witnesses had always done business at other offices. The party applying, signed the Proposition Book, setting out the subject matter, rate, time, &c. Smith, then said, " The insurance was complete," or, " The vessel was then at the risk of the office," and that the insured might call when it was convenient, and take the policy. The same method of proceeding was proved in cases of insurance effected with this company, by one who was a Director in the company.

" It was further proved, That Loring had been a ship owner for fifteen or twenty years ; that Thaxter Prince and Levi Blanchard, two others of the plaintiffs, were old shipmasters ; that Loring was always the managing owner of the " Oxford," from whom the masters received all their orders, and to whom they uniformly made all their remittances.

" Upon the foregoing facts, the following " legal points " were " presented for decision.

" By the plaintiffs : —

" Whether a valid contract of insurance was effected between the parties ?

" Whether the amendment is allowable ?

" By the defendants : —

" Whether the neglect of the owners, other than Loring, to execute and deliver the premium note, until after the loss was known to the parties, did not invalidate the contract, if it had otherwise been made between the parties ?

" Whether the plaintiffs can recover on the count and declaration in their writ, upon the proofs exhibited in the cause ?

" Whether the objection taken by defendant to proof of custom, as reported, is sustainable ?

" The following agreement of parties, with the assent of the Court, was filed in the cause : —

" For the purposes of this trial, the defendant waives any evidence in respect to the loss, and in respect to any warranties contained in the contract or policy, and the parties agree, that the only issue upon this trial shall be, whether or not a contract of insurance was effected, as alleged by the plaintiffs ?

" If this issue is finally determined for the plaintiffs, then the cause shall be open for a new trial, on any other ground of defence."

Here follows a formal count on an agreement by the defendant to insure the plaintiffs to a certain amount " upon a schooner called the Oxford."

" The count offered in amendment recites the policy at length, and is drawn according to the usual precedent in Chitty of a count upon a policy.

" Report agreed.

" Augustine Haines, Att'y for D'f 't.

" P. Barnes, for Pl'ffs.

" To the Hon. Justices of the Supreme Judicial Court.

" In the trial of this case, the several questions of law presented in the above *Report of facts,* having arisen, the cause

is transferred to your Court for a decision of those questions, or such of them as may be material, for a final decision of the cause. And such disposition is to be made of the case, as you are authorized by law to make from the above report of the facts, and the agreements contained in it, signed by the Attorneys for the respective parties.

" DANIEL GOODENOW, Jus. Dis. Court,

" *Western District.*"

The case was fully argued in writing by

*W. P. Fessenden, Barnes* and *Freeman,* for the plaintiffs, and by

*Haines,* for the defendant.

Among others, the counsel for the plaintiffs claimed to support their action on these grounds.

The original count sets out a contract or an agreement to insure. The subject matter, the consideration, the promise of indemnity and the breach are severally and distinctly stated, so that the relations of the parties can be exactly understood, and the testimony and the judgment can be applied to every allegation with certainty. The contract of insurance subsists practically in a variety of forms, each of which has its appropriate method of proof. The plaintiffs are entitled to recover on the original count. 2 Phillips' Ins. 602, 617; 4 Cowen, 645; Marshall on Ins. 210; 2 Greenl. Ev. § 376; 23 Wend. 18; 1 Pick. 278; 10 Pick. 326; American Precedents, 162.

The amendment is admissible. Both counts are for the same cause of action. 15 Maine Rep. 400; 16 Maine R. 439.

The contract was a valid one. In the relation in which Loring stood to the other owners, he had authority to insure not only for himself but also for them. But where a part owner of a vessel effects insurance for himself and the other owners, they may ratify his act after they obtain knowledge of the loss, and the insurers cannot object to want of authority. 3 Kent, 247; 5 Metc. 192. The delay of ratification did not

render the contract invalid on the ground of want of mutuality. 2 Gill & J. 136.

The case of the plaintiffs depends very little upon proof of custom, yet the evidence on that point was competent and sufficient.

By the well established principles of marine insurance the contract took effect by the transactions between Loring and the company on the fifth of November. Where the minds of the parties have met, and the act of signing the memorandum is performed, the thing is in fact done, the contract is made, and the indemnity is secured. Arrangements and agreements about the mode of securing, or paying the premium, or the form of the credit, are entirely subsidiary and subordinate to the principal contract, and do not affect it, unless expressly and advisedly incorporated with it. 1 Wash. C. C. Rep. 93. The insurers had no right to retract after the loss. Case last cited, and 16 Maine R. 439.

*Haines* argued in support of these, among other propositions.

Unless Loring was authorized by the other owners, at the time he applied for the insurance, to effect insurance for them, there was no valid contract. No forms, or proceedings, or modes of doing the business, could bind the other owners to pay the premium, unless they had authorized Loring in some way to contract for them to pay the same. 5 Metc. 196, and cases there cited. There can be no presumption of authority in favor of the plaintiffs. It is incumbent on them to prove it, and they have failed so to do. So far from their having authorized Loring to make insurance for them, and to make them liable for the premium, it is not shown, that they even knew, that such proposition had been made.

The agreement must be obligatory on both parties, or it will bind neither. Chitty on Con. 15, and cases there cited; 12 Johns. R. 90 and 396.

The principle that where a part owner of a vessel " effects insurance for himself and the other owners" they may ratify the act after the loss, cannot aid the plaintiffs, however sound

the doctrine.    Here no insurance of that description was
effected.    To do this, he must either pay, or make himself lia-
ble to pay the premium.    This was not done in the case under
consideration.    5 Metc. 192 ;  Story on Agency, § 248 ; 2 M.
& Selw. 485 ; 13 East, 274.  Loring alone was not liable.
He did not profess to contract alone, but for himself and others
jointly.   If the others had disavowed the act, no action  could
have  been  maintained  by  the  defendant  for  the  premium.
There is no proof of the consideration alleged by the plaintiffs
in their declaration.

So far as the cases cited for the plaintiffs from the first of
Pick. 278, and 10 Pick. 326, are in similitude with the present,
they are authorities for the  defendant  to  show  there  was  no
contract.   In the  case  cited  from  Washington's  Reports, the
agent had previous authority from  the  principal  to  contract ;
here he had not.   In the case cited from 16th of our Reports,
the insurance was effected by Warren alone, eo nomine ; and
he gave his own note for the original premium, and became
personally liable for the additional rate for the healing.

No question was made by the counsel on either side, relative
to the mode in which the case came before the Court.

The opinion of the Court was drawn up by

WHITMAN C. J. — This cause is brought before us under the
belief, entertained by the parties, that it comes within  the act
of 1845, ch. 172, which provides, that " whenever it shall hap-
pen in the trial of any cause in the District Court, that any one
or more questions of law arise, it shall be lawful for the Judge,
with the consent of the parties, to draw up a report of the case,
presenting the legal points for decision, and containing such
stipulations as the parties may make, relative to the disposition
of the case  by nonsuit, default  or  otherwise ;" and  that  the
same shall be transferred to this Court for decision.

It will be important, in the first place, to ascertain the true
intent and meaning of the Legislature, as contained in this
enactment.    Was it intended, that a cause in which some
incidental and incipient question might arise, should, thereupon,

be transferred to this Court for its decision ; and, upon its decision, that this Court should, thereafter, continue its jurisdiction over the same to its final termination ? Or was it intended, that, in a trial in the District Court, the cause should proceed to a full developement, and then, if any questions of law were found to have arisen therein, upon which the decision of the cause one way or the other must ultimately depend, that the same should be transferred to this Court for a final decision ? If the former was the intent of the enactment, every cause in the District Court, upon a slight, and even frivolous pretence, however unimportant the amount at stake might be, could be transferred from that Court to this, whereby the manifest intent of the Legislature, in the Rev. Stat. ch. 96 & 97, defining the boundaries between the jurisdiction of the two Courts, would be virtually frustrated. If the latter, then the distinction, in spirit and meaning, would still be maintained. The act itself speaks of " the trial of any cause." There was then to be a trial in the District Court, in which the questions of law might arise. A *report* of the *case* is to be drawn up by the Judge. A report as to one incident, occurring in the first stage of a cause, could not well be denominated a report of a cause, which had been tried. The parties, moreover, are to make stipulations as to the disposition of the cause. What is meant by the disposition of the cause ? Must it be other than a final determination of it ? This disposition is to be " by nonsuit, default or otherwise." A nonsuit or default would be a final disposition. And what is meant by " otherwise" ? Generally, when certain items are specified, and others are said to be included, without particularizing them, they must be of the same kind. Upon this principle " otherwise," in this instance, must necessarily have reference to a disposition of the cause equivalent to what would be effected by a nonsuit or default. Besides, in § 2 of the act, it is provided, that this Court shall " render *judgment* therein, in the same manner, and with the same effect, as on a report made by consent of parties, by a Judge of the Supreme Judicial Court." This Court is to render *judgment* therein. To render judgment would seem to

imply a final disposition. Furthermore, the case is to be reported? Does not this mean a full report, so that the case can be finally disposed of? If all the facts were reported, with the points of law supposed to arise therefrom, there could be no reason for any agreement for a further trial. These considerations alone might be sufficient to authorize us to dismiss the case from our further consideration, as we are presented with but a part of the case for determination.

But there are other weighty objections to our taking cognizance of it. The writ originally contained but one count; and that was on an alleged agreement, on the part of the defendant, with the plaintiffs, to become insurer by a policy to be effected on the schooner Oxford. Before issue was joined a motion was made for leave to amend by declaring upon a policy as actually made for the purpose. This motion was neither granted nor refused; and yet the cause was allowed to proceed to trial, seemingly as if it had been made. And the case states, that it was agreed between the parties, if this Court should be of opinion, that the amendment was admissible, it should be considered as having been made. By the statute it would seem that it was in contemplation, that a trial should be had in the District Court, and that questions of law might arise therein, on which a final decision would depend. Can a cause, when such an amendment was proposed, and undecided upon, be considered as proceeding to trial; especially if the maintenance of the cause depended upon its introduction? It is difficult to perceive why the amendment should not have been admitted. *Barker & al.* v. *Burgess & al.* 3 Metc. 273. And if admitted, it might have constituted the only basis upon which the action could have been maintained; and very clearly the only foundation for the question, which it is said, in the latter part of the report, the parties had agreed, alone, to submit to our decision, viz: "whether a contract of insurance was effected."

But the graver objection to our taking cognizance of the cause is, that the question, as to the efficacy of the contract, is one not of law purely, but a mixed question of law and fact.

It is agreed, and may be regarded as reported by the Judge of the District Court, that a policy was actually made, and duly signed by the agent of the defendant, John W. Smith, as had been contemplated between the parties, and entered, by said agent, upon what was called, his record; and that the defendant and others had, by a public advertisement made by the same agent, held themselves out as having formed a voluntary association, by the name of "The Portland Marine Insurance Company," the said Smith being president and secretary of the same, with power to affix the signatures of each of the associates to policies. But the policy, so made and recorded, was never actually handed over to the plaintiffs. Ordinarily an instrument in writing to be effectual, is expected to be delivered to the obligee therein. But in reference to parol agreements, and policies are not often, if ever, under seal, every thing must depend upon the intention and understanding of the parties. They may consent, that a writing which is intended to contain the evidence of an agreement between them, though it may be left in the hands of the one party, or the other, without any formal delivery of it by either to the other, shall be evidence of their agreement. What the intention of the parties may be, as to a writing prepared between them, in reference to its efficacy, is a question referable to a jury as matter of fact, and not altogether of law, referable to the Court. To ascertain such understanding and intention, resort may be had to the nature of the contract, the subject matter of it, the habits and modes usual in such cases, and to the language and declarations of the parties. The defendant, in this instance, with others, held themselves out as general insurers; and as keeping an office for the purpose, by their agent, Smith, allowing him to style himself president of their board of directors. A jury might infer that they were fully conversant with that business, and that they had adopted the usages incident to it. If it was customary for the insured to be content, that their policies should, when made out, remain in the office of the underwriter, and still be obligatory; and it should appear that such had been the case in the office of the

defendant; and, at the same time, that the agent or insurance broker had all along declared, that the risk had been taken, and was upon the company; and if it should be believed, that, in case there had been no loss, the premium would have been executed and recovered, a jury might conclude, that it was intended, that the policy, so made out should constitute a binding contract. The argument, that Loring, one of the plaintiffs, had not authority to contract for the rest, considering that he would be answerable personally for the premium, if he had not such authority, and considering that this objection was not made during the progress of the contract, nor until a loss had occurred; and especially as the plaintiffs ratified the contract, and never repudiated it, bringing themselves within the decision in *Finney & al.* v. *F. Ins. Co.* 5 Metc. 192, might not affect the claim of the plaintiffs. The not giving of a note for the premium might be made to appear unimportant, as constituting only a reiteration of the promise to pay it, contained or fully implied in the proposition for insurance, signed by Loring in behalf of the plaintiffs.

On the whole, therefore, we cannot regard the question, intended to be submitted to us, as one of law unmixed with matter proper for the consideration of the jury; and the cause must be dismissed from our jurisdiction.