Mr. Chief Justice Wations delivered the Opinion of the Court. This was an action of assumpsit to recover the premium on a policy of insurance, alleged by the company, who was the plaintiff below, to have been issued to the defendants, Southeimer Lindauer & Co. The suit being discontinued as to Southeimer^ the other defendants pleaded nul tiel corporation and non as-sumpsit. Upon the trial, the plaintiff had judgment, and the defendants reserved their exceptions upon the overruling of their motion for new trial. The bill of exceptions shows several objections taken by the defendants during the progress of the trial-, arid which are here urged for érror. It is contended that the issue formed upon the- pl'ea of nul tiel corporation, should have been tried by the court, instead of being submitted to the jury. The question whether, in a süit by a private corparation of this State, or by any foreign' corporation, of which the courts will not judicially take notice, the general issue admits the corporate existence, so that the defendant must deny it specially in order to put the plaintiff on proof, has never been settled by this court, unless it follows from the case of The Aldermen vs. Flinley, (5 Eng. 425.) See authorities collected in Angelí &' Ames on Corporations, sec. 632. The mere forin of raising the issue would not change its' charactér. In either mode, it is an inquiry of fact to be ascertained by the jury; subject, as in other cases, to the power of the court to determine, as to the competency of the evidence, and if documentary, to instruct the jury as to its legal effect. Here the corporate existence depended on the proof of the legislative acts of another State; not strictly foreign laws, as between the States composing the Federal Union. In such cases, it may often be difficult to distinguish between the province of the court and the jury; and many vexed questions as to what is the proper mode of proceeding can be imagined. Where foreign unwritten laws are to be proved, the jury must determine as to the credibility of the witness. The only rule of universal application would seem to be that the issue upon the plea of nul- tiel corporation, should be tried as a matter of fact by the jury, although, in many cases, the proof is really passed upon by the court, and the verdict necessarily in accordance with its instructions, so that the intervention of a jury may appear to be useless : yet this is so in- every case where the right of either party may depend upon the construction of a deed or writing admitted in evidence.- The plaintiff, to maintain the issue upon the plea of nul tiel-corporation, offered in evidence authenticated- copies of certain acts of the General Assembly of Pennsylvania, from-which it appears, that the company was originally incorporated in 1835, under the name of the Delaware County Insurance Company, with a cash capital to be paid in by the stockholders. In 1843, a supplement to that act was passed, changing the whole character of the corporation, and incorporating the stockholders under the style of the Delaware Mutual Safety Insurance Company, the capital stock of which was based in whole, or in part, upon the negotiable premium notes of the insured. The supplement contains a provision, that it should take effect as soon as stockholders holding upwards of one-half of the capital stock of the company shall have signified their assent thereto in wx'iting, “which said assent shall be recorded in the office for recording-deeds in and for the city and county of Philadelphia, a certified copy whereof, under the seal of said office, shall be evidence of the acceptance, by the stockholders, of this act, in all courts of record,” &c. The defendants objected to this act being admitted as evidence without proof of its acceptance in the mode provided. This, or some other satisfactory evidence of organization and user under the supplementary act, would have been indispensable, but for the fact that, among the various acts admitted in evidence, was a further supplement passed in 1844, in which the existenceaof the corporation by n'ame, and as proposed to be organized by the act of 1843, was distinctly reorganized by the general assembly. The court, therefore, properly admitted the evidence, and should have instructed the jury that it was sufficient to prove the issue.. The plaintiff offered in evidence the deposition of a witness, which was objected to upon several grounds; one of which was that it was not taken upon sufficient notice. The statute requires three days notice, “and one day additional for every twenty miles of distance from the place of serving or setting up such notices to the place of taking the depositions.” The deposition was taken in Philadelphia, and it was proved to the court below, that "if the distance was to be computed by way of the rivers, which was the route usually traveled, there would not be the requisite number of days, from the time the notice appeared to have been served, but if the distance was to be measured by the usual direct land routes, there was time enough, though less traveled, and, in fact, less expeditious than the river route. The circuit court ruled the notice to be sufficient in time; and properly so, upon any fair construction of the provision quoted. The statute, evidently adapted to a new country, wanting in the facilities of transportation, contemplates the usual, convenient and most direct traveled land route; according to which there was ample time, and the party notified will not be heard to object that the time allowed was not sufficient, in case he chose to adopt the river route, if it was at the same time the most convenient and expeditious. The other grounds of exception to the deposition of this witness, are involved in the statement of the merits of the controversy. The witness, who is the president of the company, testifies that, on the 7th of September, 1847, the defendants signed an order to the company for insurance, which is as follows : “Delaware Mutual Safety Insurance Company, insure 7000 dollars on goods, valued at that sum, for transp. lines, at and from Philadelphia to Pittsburgh, and at, and from thence per steam or keel boat or boats, to Little Rock, Arkansas. For account of ourselves, loss, if any, payable to us. Premium, 2 per cent, ' $140 1 $141 SOUTHEIMER, LINDEAUER & CO.” The order is exhibited, and the witness states that from it the policy of insurance, also exhibited, was issued. The order is without date, and the policy bears date on the 7th of September, 1847. The witness testifies that the policy was executed and sealed by the corporation through its proper officers, whose names are thereto subscribed. That the seal affixed to the policy is the common or corporation seal of the company affixed thereto by its proper officers, and the impression of the seal thereto is in the usual manner, &c., recognized by the courts of Pennsylvania as a proper and legal mode of affixing a seal of a corporation to a policy of insurance or other paper. That the premium of two per cent, was then the usual charge for insurance of goods from Philadelphia to Little Rock, upon the transportation indicated, That this, on goods valued at $7000, amounts to $140, which with one dollar for the policy, is due to the company from the defendants, and remains unpaid. The remaining portion of the deposition, is as follows: “ The insurance for the amount, and under the time specified in th.e order of the defendants, annexed as exhibit B, was perfected, and the plaintiff bound thereby, as is usual and customary in such cases. The policy of insurance annexed, as exhibit C, was made out and ready for delivery at any time, to the said defendants, on the payment of the premium, or sum of one hundred and forty one dollars. The policy of insurance is a receipt, and its delivery to the defendants would have been a receipt for the payment of the premium, and a discharge of the plaintiff’s claim against the defendants. The insurance was effected, and as legally binding upon the plaintiff without th.e delivery of the p.olicy as with it. This is both the custom and the law of the State of Pennsylvania. The insurance is effected and completed by the acceptance of the order for insurance, and the company would have been bound to pay in this case, if loss had accrued. The defendants order for insurance was accepted by the plaintiff.” The plaintiff then introduced a witness, who proved the partnership of the defendants, and the genuineness of the signature to the order for insurance, and who stated, on cross examination, that the defendants insured their goods at Cincinnati, that he was there with Lindauer, and saw him pay the premium and take the policy; and, so far as they knew, they did not insure in Philadelphia, and he was with Lindauer at both places; that the defendants were strangers in Philadelphia, and he believed they were not known to the Delaware Insurance Company. On behalf of the defendants two witnesses, testified that they had,for several years, acted as agents for insurance companies: they knew nothing of the rules and regulations of tjiis company; but, so far as their knowledge or experience extended, it is a universal rule and custom with insurance offices in tbe United States, to rquire the premium to be paid or secured before an insurance is considered as effected, and that without it, an order for insure anee is not considered as of any force, especially from a stranger. That the delivery of the policy is ordinarily the consummation of the contract. The foregoing is the substance of all the testimony on either side. The court permitted the deposition and exhibits to be read against the objections of the defendants, but told the jury that the witness had no right to testify about the laws of Pennsylvania as matters of law, and that they should disregard so much of his deposition. The court, against the objection of the defends ants, instructed the jury that the insurance company had the right (both parties agreeing,) to effect an insurance without pre-pay-? ment of premium — the company having the right to secure the payment of the premium, by verbal or other contracts for that purpose, Further, that if, by law or usage, in Pennsylvania, the insurance company would be bound forlosses for insurance with? out a delivery of the policy, and that such liability was incurred in this case, on request of the defendants, they are liable for the premium in this action. The court refused to instruct the jury on motion of the defend? ants, 1st. That an order for insurance does not constitute a valid and binding contract unless the premium be first paid or secured: 2d. That the plaintiff cannot recover unless it has been proved, to their satisfaction, that the proposition of the defendants was accepted and a policy made out and tendered to the defendants, or notice given to them that such policy was ready to be delivered: 3d. That the policy of insurance, until delivered, was not binding on the company making the same. Butthecourt charged that as to whether the payment or securing the premium was necessary to constitute a valid and binding insurance, depended .on the rules and regulations of the company, and if the person ordering insurance knew those rules, he would be bound by them, and the jury must judge what they were; and a person dealing with a corporation, is presumed to know their rules and regula? tions, and if, in this case, the jury believed the acceptance of the order for insurance consummated the contract, they will find for the plaintiff, and as to paying and securing the premium, the company had the right to make any arrangement they pleased. In the course of these proceedings, several errors were committed against the appellants. By section 9 of the original charter of the company, and which does not appear to have been changed by any subsequent act, it was authorized to make insurances, &c., and “every such contract, bargain, agreement and policy, to be made by the said corporation, shall be in writing or in print, and shall be under the seal of said corporation, signed by the President and attested and signed by the secretary or other officer who may be appointed by the president and directors for that purpose.” So far as appears from the transcript sent up on this appeal, the instrument read in evidence, and referred to as the policy executed by the company and stated by the witness to be under the seal of the company, is not sealed, nor does it purport to have been sealed. The claim of the plaintiff to recover in this action, proceeds on the ground that the contract was consummated' by the execution of the policy. The omission may possibly be a diminution of the record, which might have been corrected upon a suggestion, in due season; but upon the record as submitted, it is clear that the instrument could not have been given in evidence. Among the statements made by the witness referred to, in his deposition, is the expression of his opinion that the insurance is effected and completed by the acceptance of the order for insurance, and the company would have been bound to pay in this case if loss had accrued. The admission of such a statement as evidence, against the objection of the defendants was a violation of the rules of evidence. In as much as the merits of the case turned on the question whether, upon the facts stated, the company had incurred any risk, so as to have earned the premium, the witness might as well have testified that the plaintiff is entitled to recover in this case. Indeed the whole tenor of the deposition is, in this view, objectionable. Whether the contract was executed, so that if the parties had changed positions, the company would have been liable in case of loss, is a question of much difficulty. The utmost good faith and fair dealing are required in contracts of this description; this much the courts will enforce. But for the courts to consider every thing as done, which is agreed to be done, and to enforce as contracts the dealings between the parties, which are upon honor, but do not amount to a contract in law, would seem to have the effect of changing the whole character of the contract of insurance ; instead of being a contract in writing setting out the various stipulations agreed on between the parties, it would rest in parol, to the great encouragement of frauds in a branch of the law already so fruitful in litigation. In the case of Heard & Amory vs. The Providence Ins. Co., (2 Cranch 127,) the action was upon a policy of insurance, and the defence was that it had been canceled by agreement of parties. It was claimed by the company that it had accepted a proposition from the assured to cancel the policy, in respect of which communications in writing had passed between the parties. The court considering that as the policy was not actually given up or canceled, a contract to cancel it must be as solemn an act as a contract to make it, said of those communications, that “they do not import a contract. They were negotiations preparatory to an agreement, but not an agreement itself.” Kohne vs. The Ins. Co. of N. America, (1 Wash. C. C. 93,) was an action of trover for a policy of insurance. It was admitted,, on both sides, that if the agreement for insurance was perfected, and the plaintiff would have recovered upon the policy, that the want of it should produce no difficulty. The case, so far as material here, was that the plaintiff had directed his agent to effect a certain insurance. The agent called on the president of the company, and left with him the order for insurance. The agreement was made, and a note with approved security was to be given for the premium. The agent left the office before the policy was filled up, but it was done in a few hours afterwards, of which the president gave notice to the agent. On a subsequent day, the agent called to deliver the note and receive the policy, but the company refused, having heard of the loss. At the time the agreement was made, the parties were ignorant of the loss. Upon these facts, Judge Washington charged thejury that the contract was not inchoate, but perfected before notice of the capture of the vessel. Perkins vs. The Welsh. Ins. Co., (6 John. Ch. 486,) was a bill in chancery to recover indemnity for property burned, and which it was claimed the company'had previously become bound to insure, or as an alternative that the compan3rbe decreed to execute and deliver to the complainant a policy of insurance pursuant to their agreement to bear date on the same day that the premium had been paid to their agent in Charleston. Chancellor Kent denied the relief on the ground that the agent, in undertaking to bind the company, had exceeded his authority, but the decree was reversed on appeal, (see 4 Cowen 645,) the court of errors taking a different vie'w of the instructions of the company to the agent. Divested of that feature, the case would be this That the company had given public notice that they would insure at certain rates, and that wherever an application was made to insure and the premium paid, if the company should be satisfied with the risk, the policy should issue as of the time when the premium was paid. Senator Calden put the case as if the president or secretary of the company had signed the receipt- for the premium, and then the insurance would be as binding as if the policy had been executed. He says, “receipts of this nature are in common use. They are intended to give immediate effect to the insurance, and supply the place of a policy., until one can be prepared.” He thought the company had shown no reason why they should not have been satisfied with the risk according- to their usual course of business, and he would not presume that they refused because the loss had intervened. In Thayer vs. The Middlesex Fire Ins. Co., (10 Pick. 326,) the question was whether the company had accepted a proposition to insure, so as to bind them, the property having been destroyed before the consummation of the contract.- The court decided- that the company was not liable. Without detailing the facts,-this case is distinguishable from Perkins vs. The Washington Ins. Co., because no premium bad been paid, nor any receipt signed by the company or its agent, which could be considered as a binding agreement to insure, In the case now before us, there was clearly a proposition to1 insure. We may suppose that .the company accepted the proposition. But notwithstanding the broad and positive statements of the witness for the plaintiff, the question forces itself upon us,was this acceptance binding — was there any consideration for it,- and up to the time that the premium was paid, of secured, might not the company have retracted it? The witness says the policy was made out and ready for delivery to the defendants at any time on payment of the premium; and that its delivery would have been a receipt for the premium and a discharge of the plaintiff’s claim against them. This language must mean that the defendants were not entitled to the policy without paying the premium, and it is difficult to see how they could have had any rights under the policy, when they had not entitled themselves to demand it, and the company had come under no obligations to deliver it. True, we can suppose that a company may agree and bind itseif to insure on the request of one in- whom they repose confidence, without the payment of the premium, because they rely upon him to pay or secure it any moment. But in such case, in order to consider the contract as completed by the acceptance of a proposition to insure, it must be supposed that the company has waived its right to require the payment of-the premium as a condition precedent to the delivery of the policy. The statement of the witness is inconsistent with such a supposition. Although our impressions are against the right to recover, we are not disposed to conclude the plaintiff in any future trial. On the remanding of the cause, if it Be shown by the testimony of witnesses skilled in the law and competent to testify, that by law or usage in Pennsylvania, upon the facts proven it follows that the contract was completed, and the company bound in case of loss, it might become our duty to give effect to the contract according to the law of the place where it was made and to be performed. If the affidavit, which appears in the record and annexed to exhibit C to the deposition, was'read in evidence, it was clearly erroneous. It would seem to be unnecessary to notice at length the objections taken to the instructions of the court. They were erroneous so far as they assumed the existence of laws or usages not in proof. But on the point mainly argued by counsel, that the court cannot refer a question of law to the jury, the distinction is to be observed between our own laws and those of a foreign State. Foreign laws are to be proved as facts, and it should be submitted to the jury to find whether the foreign law or usage, ás claimed to exist, has been proved, and the court may instruct them what the rights of either party are, according as they may find it proven or not proven. We apprehend this is the proper course, wherever unwritten foreign laws are proved by witnesses. For the reasons given, our opinion is that the court erred in overruling the motion for new trial, and that the judgment of the court below ought to be reversed, and the cause remanded for further proceedings according, to law, and not inconsistent with this opinion.