## YOUSEY v. QUEEN INS. CO.

(Supreme Court, Trial Term, Jefferson County.　January, 1914.)

1. INSURANCE (§ 668*)—FIRE POLICY—CONSTRUCTIVE DELIVERY.

Where defendant's general agent, with authority to issue policies, issued the policy in question July 1, 1909, countersigned same, and informed plaintiff's agent by telephone that he had placed the insurance as directed, and would send on the policy, but, not having done so until after he was informed of a loss, attempted to cancel the policy as not delivered, and returned it to defendant, who thereupon stamped on the policy, "Canceled June 5, 1909," after the fire, whether there was a constructive delivery, within the rule that a constructive delivery is sufficient to give vitality to a policy, was for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. § 668.*]

2. INSURANCE (§ 558*)—FIRE POLICY—PROOF OF LOSS—WAIVER.

Where defendant's general agent, with authority to issue fire policies, issued a policy covering plaintiff's property in accordance with a request from plaintiff's agent, countersigned the same, but did not deliver it, though having notified plaintiff's agent of the issuance of the policy, and, on being informed before actual delivery that the property was destroyed, attempted to cancel the policy, and declined to inform plaintiff of the name of the company in which the insurance had been placed, such action on his part was binding on the company, and constituted a waiver of plaintiff's duty to file with such company proofs of loss within the time specified.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1382–1390, 1405; Dec. Dig. § 558.*]

Action by Peter Yousey against the Queen Insurance Company. On defendant's motion for a new trial on the minutes. Denied.

White, Cheney, Shinaman & O'Neill, of Syracuse, for the motion.
Wilbur A. Porter, opposed.

EMERSON, J. The plaintiff, being the owner of a sawmill at Aldrich, Lewis county, N. Y., employed one Mills, who was a lawyer and insurance agent at Carthage, to attend to the insurance on the same and to procure such insurance thereon as he thought proper. One Baker was the agent of defendant and of several other insurance companies at Gouverneur, in whose territory the plaintiff's mill was located, to whom the defendant had issued policies in blank and authorized him to issue same, collect premiums thereon, make renewals and cancel insurance thereon, and Mills had placed four policies of insurance on this sawmill with Baker in companies which he represented. These

policies of insurance expired on June 1, 1909, and were renewed by Baker shortly before they expired. He at the same time notified Mills that if he desired further insurance upon the sawmill he could place from $3,000 to $4,000 additional thereon. On June 1, 1909, Mills wrote to Baker, advising him that he desired $3,000 at least, and if possible $4,000, additional insurance on the property for the benefit of plaintiff. This letter was received by Baker on June 1, 1909, and he on the same day filled out a policy of insurance in the defendant for the sum of $1,000 on this property, and on the same day reported it to the defendant and mailed the report to the stamp clerk at Watertown. A fire occurred on the morning of June 3, 1909, which totally destroyed the property thus insured, and, after hearing of the fire, Baker wrote upon the policy, "Canceled not delivered," and returned it to the defendant, who thereupon stamped upon the policy, "Canceled June 5th, 1909." The foregoing facts are undisputed in the case.

Mills further testified that on the morning of June 3, 1909, he had a talk with Baker over the telephone, in which Baker said he had placed the insurance as directed, and that he would send on the policy. This is denied by Baker, but the evidence was sufficient to warrant a finding to that effect. The policy also contained a provision that it should not be valid until countersigned by Baker, and when produced the policy bore an indorsement showing it was so countersigned by Baker, bearing date June 1, 1909. Baker on the trial testified that it was not so countersigned until after he heard of the fire, but he was unable to state just when he did countersign it in fact. In view, however, of the facts that it is dated June 1, 1909, that there was no reason whatever why he should countersign it after the fire merely for the purpose of returning it to the company, and the testimony of Mills as to the talk he had with Baker over the telephone on the morning of the fire, I conclude that the jury were authorized to find that the countersigning took place on June 1, 1909, as stated on the policy. Baker, on hearing of the fire, refused to forward the policy to Mills, and also withheld all information as to the name of the company in which the policy was placed, and he has since refused the plaintiff all information upon the subject. The plaintiff was unable to obtain such information until he brought a personal action against said Baker and procured an order for the taking of his testimony when, for the first time, he disclosed to the plaintiff the name of defendant. Proofs of loss were served on defendant within 60 days after he obtained the information that the defendant was the insurance company named in the policy, and after said 60 days had expired, and within one year, this action was commenced.

The defendant contended that the policy never became a valid contract of insurance for want of a delivery, and also that no recovery could be had thereon, both for failure to serve proofs of loss within 60 days after the fire and for failure to bring this action within 12 months after the loss occurred. The case was submitted to the jury under instructions that if they found that the policy was fully made out and executed, and was held by Baker as a completed contract of

insurance for the benefit of plaintiff, they might find a constructive delivery of the same, and also that from the refusal of Baker to send on the policy to the plaintiff, and his refusal to give the name of the company that issued the policy, they might find a waiver of the provisions as to proofs of loss and the requirement that the action must be brought within 12 months after the fire. The jury having found a verdict for the plaintiff, the defendant now moves for a new trial upon the minutes of the court.

I am satisfied that the case was properly submitted to the jury along the lines above stated.

[1] As to the first proposition which is urged by defendant's attorney, it is settled that a constructive delivery is sufficient to give vitality to a policy of insurance. It was held by the United States Circuit Court over 100 years ago that where an agreement for insurance was made and a policy completed and executed and notice thereof given, it became valid and binding though it continued in the possession of the company. Kohne v. Insurance Co., 1 Wash. C. C. 93, Fed. Cas. No. 7,920. And the same doctrine as to the sufficiency of a constructive delivery seems to have been steadily adhered to ever since. 1 Cooley on Ins. 446; Insurance Co. v. Colt, 20 Wall. 560, 22 L. Ed. 423.

It is said in May on Insurance that the issuance of a policy by the company and a delivery of the same to the agent of the company for transmission to the assured is a sufficient delivery. That no formal delivery and acceptance is necessary, but that it is sufficient if the parties intended it as a completed contract of insurance. 1 May on Ins. (4th Ed.) §§ 55a, 60. See, also, to same effect Fried v. Royal Ins. Co., 47 Barb. 128; s. c., 50 N. Y. 243; Hallock v. Ins. Co., 26 N. J. Law, 268. It was said in the last case above cited that a valid contract of insurance arose when an overt act was done which was intended to signify an acceptance, even though such act was not known to the other party.

In Loring v. Proctor, 26 Me. 18, 19, it was held that a policy of insurance was valid without a formal delivery if the parties so intended, and that the question of their intention was for the jury. See, also, to same effect Bragdon v. Appleton Fire Ins. Co., 42 Me. 259, 262.

And indeed the precise question here presented seems to have arisen and been decided by the Circuit Court of Ohio in the case of Manchester Fire Ins. Co., Plaintiff in Error, v. Plato, Defendant in Error, 23 Ohio Cir. Ct. R. 35, 37. In that case the agent of several fire insurance companies agreed to insure certain property without naming the company in which he would place the risk. He thereupon wrote a policy in the defendant, but did not deliver the same to the assured, and it was held that it was a valid contract of insurance, and that the company was not relieved from liability, either for want of delivery, or because no company was in fact named between the agent and the assured in which the insurance should be placed. The same doctrine is also held by the Supreme Court of Michigan in Dibble v. Assurance Co., 70 Mich. 1, 4, 37 N. W. 704, 14 Am. St. Rep. 470.

A review of the above authorities must lead to the conclusion that

it was a fair question for the jury whether this policy became a valid and binding contract of insurance. So, also, it seems to me that the jury were justified in finding a waiver by the defendant of the provisions of the policy that it sets up as a defense.

It may be conceded that a mere soliciting agent or an agent with authority to place insurance only, has no power as such to waive the provision in the policy requiring service of proofs of loss. But this is because the agency only extends to perfecting the contract, and the question of the adjustment of the loss is a matter with which such agent has no concern, and therefore his acts in that regard are not the acts of the company. But an insurance adjuster may bind the company by such waiver as his acts in that regard are in the line of the duties he is called upon to perform. It is not, therefore, the nature of the agency which determines this question, but whether the acts of the agent from which a waiver is sought to be inferred were committed in the line of his duties, so that such acts become the acts of the defendant. Bush v. Westchester Fire Ins. Co., 63 N. Y. 531, 535; Goodwin v. Mass. Mut. Life Ins. Co., 73 N. Y. 481, 490; Perry v. Caledonian Ins. Co., 103 App. Div. 113, 116, 93 N. Y. Supp. 50; Van Allen v. Farmers' Joint Stock Ins. Co., 10 Hun, 397, affirmed on opinion below, 72 N. Y. 604.

So far as acts which are within the scope of the duties the agent is called upon to perform are concerned, the principal is bound and estopped by the same. 16 Am. & Eng. Enc. of Law (2d Ed.) 943; Johnson v. Jones, 4 Barb. 369; Goldwater v. L. & L. & G. Ins. Co., 39 Hun, 177, 178; West End Hotel & Land Co. v. Amer. Fire Ins. Co. (C. C.) 74 Fed. 114; Armour v. Michigan Central R. R., 65 N. Y. 111, 22 Am. Rep. 603; Fishkill Savings Inst. v. National Bank, 80 N. Y. 162, 36 Am. Rep. 595.

[2] It seems to me, therefore, to be entirely clear that Baker, as agent of the defendant, authorized to solicit insurance, issue policies therefor, collect premiums, cancel insurance, and make renewals thereof, was a general agent as to such duties, and possessed of plenary powers so far as the execution of contracts of insurance and the making, filling up, and delivery of policies of insurance are concerned. As such agent it was his duty to deliver policies of insurance pursuant to contracts therefor that he had made, and also, as part and parcel of such duties, it was incumbent upon him to impart information to the assured of the company in which he had placed such insurance, and his failure to perform these duties was the failure of the defendant. See Goodwin v. Mass. Mut. Life Ins. Co., 73 N. Y. 490.

If I am right in the above position, then the refusal of Baker to deliver the policy, and also to impart information of the name of the company in which the same was placed, was a waiver on the part of the company of the conditions in question, because it prevented a compliance with the same on the part of plaintiff. It is elementary law that no person shall be permitted to profit by his own wrong, and when an insurance company has, by its acts, prevented a compliance with the terms of its policy, it cannot be heard to allege such noncompliance as a defense to the same. May on Ins. (4th Ed.) § 503; O'Rourke

v. John Hancock Life Ins. Co. (Dist. Ct.) 30 N. Y. Supp. 216; Baumiller v. Ass'n, 9 Misc. Rep. 157, 29 N. Y. Supp. 26; Grattan v. Met. Life Ins. Co., 80 N. Y. 289, 36 Am. Rep. 617.

The case of Hicks v. British Amer. Assur. Co., 162 N. Y. 284, 56 N. E. 743, 48 L. R. A. 424, is pressed upon my attention, and is claimed to be a controlling authority in favor of defendant. I do not so understand the case. In that case the plaintiff claimed he made an oral contract to insure with the soliciting agent of defendant. No policy of insurance was made out and delivered. A fire having occurred, the plaintiff called upon the local agent for the policy and blank proofs of loss, which the agent declined to furnish, claiming that no contract to insure had been made. It was held that this did not amount to a waiver by the company of service of proofs of loss.

The essential difference between the Hicks Case and the present one is that there the plaintiff knew what company he was insured in and the failure of the local agent to deliver the policy in no manner prejudiced his rights or prevented his serving proofs of loss. The refusal of the agent to furnish and deliver blank proofs of loss was not within the line of his duty, and hence did not bind the company as a waiver of the provisions contained in the policy. The decision in the Hicks Case was placed expressly upon want of power in the local agent to make such waiver, whereas in the present case, if I am right in the views herein expressed, the acts of Baker, from which a waiver is claimed, were in the direct line of his duties as soliciting agent.

It follows that the motion for a new trial should be denied.