58   611
[162s 173

## Merchants Insurance Company of Newark v. The Union Insurance Company of San Francisco.

1. INSURANCE—*Contracts of Re-insurance by Parol, Valid.*—Re-insurance contracts made by agents are usually, in the first instance, mere parol agreements, afterward reduced to writing, the policy dating back to the time when the risk began. Such parol contracts are valid.

Assumpsit, on a contract of re-insurance. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed May 16, 1895.

### STATEMENT OF THE CASE.

About August 2, 1889, Constant Martin, who was the agent for the Merchants Insurance Company at Green Bay, Wisconsin, applied to Mr. Warren, who was the agent of the Union Insurance Company at Green Bay, for a policy of $2,000 on the steamer "Liberty," owned by Freeman & Kellogg.

Mr. Fred Warren, to whom the application was made, stated that he could not write the policy, but said that perhaps the Union would carry it, and he would write it up

and try them on. He therefore wrote a policy in the Union Insurance Company of $2,000, and gave the policy to Martin, and Martin, it seems, delivered the policy to Freeman & Kellogg.

When the daily report was received by the general agent of the Union Insurance Company, at Chicago, he immediately wrote to Mr. Warren, declining the risk, and asking him to get the policy up at once. That letter was dated August 8, 1889, and on the next day Mr. Warren went to Martin's office and found there, as he says, J. C. Martin, J. F. Lyons and Constant Martin, and told them that the Union Insurance Company had ordered him to cancel the policy, and to get it up immediately.

Mr. J. F. Lyons, who was the bookkeeper and employed in Martin's office, stated that they would place that risk in the Merchants. Mr. Warren thereupon replied that that would be all right; that all he wanted was to have the policy taken care of, and Martin again replied that they would place it in the Merchants.

Mr. Fred Warren testified that at the time he was there at Martin's office, they told him that they would replace that policy in the Merchants; that they placed it in the Merchants on the morning of his notice to them of the cancellation of the policy, and the arrangement which was there and then made, was that the Merchants Insurance Company would insure that boat in the sum of $2,000 from that time, and relieve the Union Insurance Company from that risk.

Mr. Warren returned to his office, and on the second day after the conversation, and on Sunday morning, the boat burned. On the next morning after the boat burned, Mr. A. A. Warren, with his son, went to Mr. Martin's office to get the Union's policy. They found Mr. Lyons in the office and asked him whether he had written up the Merchants policy to replace the Union Insurance Company's policy, as he was instructed to do, and he said he had. Mr. Warren then asked Mr. Lyons to see the Merchants register, and Mr. Lyons took it down and laid it on the desk, and Mr.

Martin opened it and found that on the day that the talk was had with Mr. Fred Warren, there was recorded the policy on the boat "Liberty" in the Merchants Insurance Company.

Mr. Lyons said that they had written up the policy and it had been regularly reported to the company all right and straight before the fire; that he had written up on Saturday before the boat burned. The testimony further shows that both Mr. Lyons and J. C. Martin accepted risks and wrote policies of insurance in the Merchants Insurance Company, and that had been their custom for years, and that Constant Martin was in the office but little of the time.

It is a part of the record of this case, that immediately before the trial in the court below, the plaintiff served notice upon the defendant and its attorneys, to produce in court the Merchants policy that had been written up, and also to produce the Merchants register from its Green Bay agency, and also to produce the telegram which the Merchants general agent in Chicago sent to Martin on Tuesday, after the fire; the evidence disclosed that all of those documents were in the hands and under the control of the Merchants Insurance Company at the time of the trial, yet it refused to produce any of them. After the fire occurred, the insurance company sent its representative to Green Bay and paid to Freeman & Kellogg $1,900, and took from Freeman & Kellogg a written assignment of all claims which they then had or held against the Merchants Insurance Company under the Merchants policy of insurance, and after taking this assignment, the Union Insurance Company made a proof of loss, and inclosed the proof of loss made by Freeman & Kellogg, together with its own proof, to the Merchants Insurance Company, which latter company at once denied all liability and refused to recognize any claim whatever, and thereupon this suit was brought.

Hoyne, Follansbee & O'Connor, attorneys for appellant.

Bates & Harding, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

There is no doubt that the appellant, by its agents, made an agreement with appellee which was virtually, when made, one of re-insurance, although it was contemplated that a policy should be issued to the owner of the property, and appellee thereby be enabled to get up its policy and be relieved of all liability.

Had the understanding of the respective agents of appellant and appellee been fully carried out before the burning of the boat, the policy issued by the Merchants would have been given to Freeman & Kellogg, the owners, and the policy before issued by the Union surrendered; this, between the agents, it was understood was to be done. Each knew that some days must elapse ere this could be effected, and each recognized that until this was done the agreement of the Merchants was really for the benefit of the Union.

Re-insurance contracts are made almost daily by agents in places of importance; they, like direct contracts, are usually in the first instance mere parol agreements, afterward reduced to writing; the policy being dated back to the time when the risk began. Such parol contracts are valid. Hartford Insurance Co. v. Parish, 73 Ill. 166.

We see no reason for thinking that this contract, about which there was nothing unusual, was not one which the agent of the Merchants had power to make. Nor do we think that it can be successfully contended that Mr. Warren had not authority from Freeman & Kellogg to procure insurance in the Merchants.

There is nothing to show that these owners had done more than to authorize him to procure insurance for them, leaving it to him to select the insurer, as to which see Dibble v. Northern Ins. Co., 70 Mich. 1.

The judgment of the Circuit Court is affirmed.