## Hartford Fire Insurance Company v. James S. Reynolds.

*Charge to the jury: Error cured.* Where the jury's attention is strictly confined to questions depending wholly on the facts alleged in a particular count of the declaration, the error of refusing to charge that there can be no recovery except under that count, is cured.

*Competency of witness.* The judge determines a witness' competency unless it depends on a disputed question of evidence, which he may refer to the jury.

*Disclosures to an attorney* in the presence of an outside party are not privileged; and where the client has himself testified as to conversations with his attorney, it seems this may operate as a waiver of the privilege to that extent.

*Agency: Brokerage.* So far as an insurance agent acts as an insurance broker, he is agent for the insured and not the insurer.

*Notice and return of premium to insurance agent.* Where the same person is at once agent for the insurance company and for the policy-holder, the latter is bound by notice to the agent of the cancellation of his policy, and by the return or credit of the premium to the agent.

*Revivor of cancelled policy by insurance agent.* An agent of an insurance company cannot revive a cancelled policy already rejected by the company, unless he has their authority to rescind or revoke their action, and that, too, in the specific case; this authority cannot be presumed.

*Insurance company not bound by agent's acts done outside of the agency.* An insurance agent having agreed with A to look after his risks in the company which he represented and in various others, reported lists to him showing the amount of his insurances therein, and gave him a receipt for money advanced to pay premiums:—

*Held,* In an action by A against the company represented by the agent, that as these papers were merely drawn up for A's information, by a person acting therein as *his* agent, and not in the course of any agency for the company, they were inadmissible to show any recognition by the company of the policy on which suit was brought.

*Charge to the jury: Conversation: Statements of plaintiff.* A witness having testified to a conversation with plaintiff, wherein the latter made statements inconsistent with the rights he set up in his suit, and which, if true, precluded his recovery on his own theory, and this testimony being corroborated by other evidence, the refusal to charge, as requested, that if such a conversation as testified to was held, the plaintiff could not recover, is held error, in the absence of any equivalent charge.

*Heard April 6. Decided June 12.*

Error to Washtenaw Circuit.

*Ashley Pond,* for plaintiff in error, to the point that the competency of a witness is a question for the judge, and not for the jury, cited: *Harris v. Wilson,* 7 Wend., 57; *Commercial Bank v. Hughes,* 17 Wend., 94; *Cook v. Mix,* 11 Conn., 432; *Reynolds v.*

HARTFORD FIRE INSURANCE CO. *v.* REYNOLDS.

*Lounsbury, 6 Hill, 534; Halcomb v. Halcomb, 28 Conn., 177; Reg. v. Hill, 5 Eng. L. & E., 547; Naves v. Williams, 22 Ind., 368; Campbell v. State, 23 Ala., 44; Withauer v. Latham, 12 Conn., 392; Chottau v. Searcy, 8 Mo., 788. Contra, Bartlett v. Howitt, 33 N. H., 131; Hays v. Hunsicker, 26 Penn. St., 58.*

*Beakes & Outcheon,* for defendant in error.

CAMPBELL, J:

Suit was brought and recovery obtained on a policy of insurance alleged to have been in force at the time of the destruction of certain mill property of defendant in error in August, 1874.

There were several counts in the declaration, and among other things it is claimed the court erred in refusing to charge that there could be no recovery except under the first count, which was for a renewal of a policy which had expired on the 2d day of April, 1874, by its extension for one year, including the engines and boilers, which were not covered by the original policy.

We think that as the case was left to the jury, this instruction was in fact given, inasmuch as their attention was strictly confined to questions depending entirely on the existence and validity of the renewal agreement. The important questions in the case arise out of other matters of more direct bearing on the merits.

Another objection is perhaps proper to be considered by itself, namely, the rulings concerning the testimony of the witness Hewitt, whose statements were in part ruled out originally, and in part left to the jury to receive or reject, as relating to privileged communications between attorney and client.

After the fire, Mr. Hewitt was employed to prepare the proofs of loss, and seems to have had some other work to do in hunting up the documents and making inquiries. It is difficult from the record to determine,—supposing him to have been a professional adviser,—precisely what part of the transactions came within professional privilege. Hewitt and

Reynolds were directly at variance concerning the existence of the relation at all, during some part of the occurrences. The court excluded some matters and received some matters during Hewitt's examination. In the charge it was left to the jury to exclude his testimony of interviews entirely, if they were satisfied from the evidence before them that the conversations took place while Hewitt was Reynolds' attorney.

We do not think it improper to leave to the jury the question of the existence of such a relation when disputed. The judge may determine upon the statements of a witness himself whether he is competent or not; but it does not properly belong to a judge to decide upon the truth of matters which have come out during the examination of witnesses who conflict. And it has been held that on an intricate question of fact the jury may very properly be consulted.—*1 Edw. Ph. Ev., 4.* We understand this to be correct practice, and in many cases to be the only safe rule for determining such questions. It is laid down very plainly by *Greenleaf.*—*1 Gr. Ev., §§ 49, 425.*

But in the present case, we think too large a range of exclusion was left to the jury. They were left at liberty to exclude all the conversations between Reynolds and Hewitt during the period of the professional employment. There was room to claim that all of their intercourse was not privileged or confidential, and some testimony was given by the plaintiff himself, concerning what took place between them, which might possibly be at least a partial waiver of the privilege as to the occasions referred to. At one of the principal meetings Mr. Case was present and took part in the deliberations, which could not, therefore, be regarded as within professional confidence. The judge undoubtedly did not intend to shut out any but confidential matters, and the failure to define them was probably inadvertent.

The principal controversy arose concerning the existence of the renewal of the policy. The evidence was uncontradicted that the insurance company held it cancelled in May, 1874. It was returned to them by their orders, from the

agent, Kirchhofer, who had countersigned it, but who had always kept it in his custody for Reynolds. The contest, therefore, was as to whether this cancellation was operative or not as against Reynolds. He claimed to have paid the premium, and to have received no notice of cancellation.

It is necessary, therefore, to know something of the surroundings of the case. Reynolds owned a valuable mill property in Manchester, where Kirchhofer and he resided. He kept up a large insurance, amounting with that in dispute to about thirty thousand dollars. Of this, twenty thousand dollars was obtained of companies for which Kirchhofer was agent. An arrangement existed between them whereby, in consideration of dealing with Kirchhofer, Reynolds was to have an abatement of five per cent. out of the premiums, to be allowed out of Kirchhofer's commissions. The latter also gave him time on his payments of premiums, and did not exact cash down.

There was evidence also of a further understanding that Kirchhofer should look after the insurances and see to their renewal; and that Reynolds left the whole custody and care of the documents with him, and never informed himself except through Kirchhofer concerning the risks. He made no personal application to the insurers. All that was done was done by the agent.

There was a dispute of fact, whether Reynolds made any specific payment of renewal premiums, and also whether he had notice of the cancellation. There was also a question concerning the date of any payment, if made.

Upon the trial, in order to show a recognition by the company of a policy as existing after the cancellation, Reynolds was allowed to introduce two lists of insurances in various companies certified to him by Kirchhofer, on the 29th of July, 1874. One of these was·a list of risks taken by Kirchhofer, purporting to include the policy now in controversy, as dated April 2, 1874, for three thousand dollars, at a premium of one hundred and thirty-five dollars. This list made up twenty thousand dollars insurance. The other

36 MICH.—64.

list showed eight thousand dollars insurance in different companies, taken by another agent in Ypsilanti. There was also a receipt dated July 30, 1874, for nine hundred dollars, being the aggregate of all the premiums in Kirchhofer's list, including this policy.    This included past payments and a note and the five per cent. commission.

These papers were inadmissible.    They had nothing to do with any business pending between Reynolds and the company.    If he had any rights they grew out of a previous insurance.    Kirchhofer did not represent the company, so far as we can perceive, so as to estop them by such admissions, and they were not made in the course of his agency. The statements were his own statements as the agent of Reynolds, and for the information of Reynolds as his principal concerning his private agency business.    It would be improper to treat such papers as equivalent to a policy of insurance, or as in any sense a communication from the insurance company.    They were merely memoranda of the transactions which Kirchhofer had carried on for Reynolds, as the receipt was his personal voucher for money paid him to reimburse him for advances.    If untrue, it was a fraud on Reynolds, for which no one but Kirchhofer could be held responsible.

It is no part of an insurance agent's duty to his company to look after the insurances of other persons, and all that he does in that way beyond what relates to insuring in his own company in the usual course of business, and for premiums paid, is outside of his official character.    As an insurance broker he represents the insured, and not the insurer.    And inasmuch as there was evidence in this case, which was open to the jury (even if seriously disputed, which in many things it was not), tending to show that Kirchhofer did not exact payments for premiums when due, but kept a private account with Reynolds, who only paid him when called upon,—the effect of this upon various questions in controversy is quite important.

If notice of cancellation was necessary, and if repayment

of premium was necessary to complete it, as is usually the case, it may be questionable how far such notice is required when the agent of the company is also the only agent or person with whom the company has acted on behalf of the insured. It is certainly not necessary to give notice to a principal who deals through a broker who is notified, or to repay money to any one but the broker who pays the premium. If the jury believed that the arrangements with Kirchhofer were such that he gave a personal credit to Reynolds, and advanced or arranged the premiums out of his own moneys or credits with the company, then the restoration to him was a sufficient repayment. And his subsequent collection from Reynolds of money on which there was no existing insurance, and without any agreement to apply it on future insurance, could not have the effect of reviving an insurance that the company had canceled. It might be a fraud against Reynolds, but it could not bind the company. To revive a canceled policy already rejected by the company, would require evidence of authority in the agent to rescind or recall the action of his principal, which could not be presumed, and would also require clear proof of an understanding that that specific act was intended to be done.

So far as we can determine from the record, there is an absence of proof of any such arrangement, as well as of any power to make it; and the charges resting on the saving effect of payments made before July 29th are erroneous, unless they can be sustained by confining them to payments made specifically on this policy in advance of, or in the absence of any legal cancellation, and in the absence of such refunding as was required.

We have already said, that if Kirchhofer was acting in the capacity of an insurance broker for Reynolds, and keeping an account with him generally, not receiving specific premiums as they were due to and reported to the company, his knowledge of cancellation and the return or credit to him by the company of the premium, would bind Reynolds.

As it was Kirchhofer's duty to notify persons insured, and to deal with them in cases of cancellation, the failure to do so was a breach of duty; but if he was himself the party to receive as well as to give notice, the company was exonerated when dealing with him as the agent of the insured, as it would have been in dealing with any other agent of that person. Reynolds, by employing him in this double and anomalous capacity, directly contributed to producing the complication. The whole arrangement whereby Kirchhofer procured the insurances by extra inducements to Reynolds in the way of sharing the commissions on premiums, had a tendency to lessen his vigilance in guarding the company's interests, and taking doubtful risks, and the credit arrangements were in the same direction. It is not presumable that either of these elements were within the scope of any authority granted by the company, and they indicate very clearly an agency from Reynolds.

A question arose concerning actual notice and acquiescence in the cancellation, which became very material in one view of the case. An agent named Chandler testified to a conversation which, if believed, showed this beyond dispute. Reynolds denied it. Kirchhofer's testimony corroborated Chandler's. The court, when requested, refused to charge, that if the renewal was canceled, and if a conversation was held in substance as testified to by Chandler, the plaintiff could not recover. No equivalent charge was made, and the assumption seems to have been, that without a return of the premium, neither notice of cancellation nor personal acquiescence in it without conditions would avail.

We can see no sufficient reason for this refusal. The question does not come within the mischief of the decisions which hold it objectionable to ask for an instruction putting the whole case on the credit given by a jury to a single witness. This conversation was a specific and vital fact in itself, and quite distinct from many things testified to by Chandler. It did not depend on his testimony alone, and was not so rested by the request to charge. It was a proper

request, unless incorrect in law. But the conversation, if accepted, showed that Reynolds did not pretend to have any rights under the renewal which had been cancelled, and made no claim that he paid any premium, and claimed no reimbursement. It was entirely inconsistent with any right or claim of right. It also tended to show a different renewal from that declared on.

We think, therefore, that the case was not presented to the jury as plaintiff in error had a right to have it laid before them.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.