# APRIL TERM, 1888.*

James R. Dibble v. The Northern Assurance Company.

*Fire insurance—Cancellation of policy—Agent retaining new policy —Charge to jury.*[1]

1. In this case it is held:

   *a*—That the policy *in suit* was delivered to plaintiff.

   *b*—That the *prior* policy was properly canceled.

   *c*—That under plaintiff's arrangement with the agent his consent to such cancellation was unnecessary.

   *d*—That, while the agent could not act for *both* parties in making the contract of insurance, he could act as custodian of the policy until called for by plaintiff, this being a matter of no interest to the company, and over which it had no control.

   So *held*, where the agent had *general* authority to keep plaintiff's property insured in companies of his own selection, with power of renewal when necessary, and on cancelling a policy gave the assured notice by mail, the parties living some 14 miles apart, and in the same letter notified him that he had placed the insurance in another company, which he did, and deposited the policy in his safe for the assured, making the proper entries on his books and reports to the company, accompanied by the premium, which he charged to the assured in their private account, less the returned premium on such cancellation, which was applied on the new policy, which letter was received during plaintiff's absence, and read by his clerk, but his attention was not called to it until after the fire, which occurred on the evening of the following day, at which time plaintiff had not returned the canceled policy, nor paid the premium on the new policy, nor had it been forwarded to the company.

---

* Continued from Vol. 69.

[1] For full digest of points decided, see *Table of Cases Reported.*

2. The *credibility* of testimony, even though *substantially* uncontradicted, is for the jury, and requests to charge requiring the court to *discredit* such testimony in order to reach the conclusions assumed in the requests are properly refused.

Error to Allegan. (Arnold, J.) Argued January 17, 1888. Decided April 27, 1888.

*Assumpsit* on fire insurance policy. Defendant brings error. Affirmed. The facts are stated in the opinion and head-note.

*Norris & Norris,* for appellant, contended:

1. That, to constitute delivery, one party must surrender control of the contract, and the other accept it; citing 3 Wash. Real Prop. (3d ed.) 254.
2. That, to constitute a cancellation, notice must be given to the assured, and a ratable proportion of the premium refunded; citing May, Ins. § 574; 1 Wood, Ins. § 113; *Ins. Co. v. Curtis,* 32 Mich. 405.
3. That Marsh could not act as the agent of both parties without defendant's consent, and his so doing voided the policy on grounds of public policy; citing *Copeland v. Ins. Co.,* 6 Pick. 198; *Ins. Co. v. Ins. Co.,* 17 Barb. 132; *Ins. Co. v. Ins. Co.,* 14 N. Y. 85; *Shirland v. Iron Works Co.,* 41 Wis. 162; *Rice v. Wood,* 113 Mass. 133; *Farnsworth v. Hemmer,* 1 Allen, 494; *Plugger v. Town Board,* 11 Mich. 222; *Scribner v. Collar,* 40 Id. 377.

*Pope & Hart,* for plaintiff, contended:

1. That Marsh was plaintiff's agent, so that notice of cancellation to him was notice to plaintiff; citing *Ins. Co. v. Reynolds,* 36 Mich. 502.
2. Actual delivery of the policy to plaintiff was not necessary to complete the contract, which would have been valid if the policy had not been written up until after the fire; citing *Ellis v. Ins. Co.,* 50 N. Y. 402, and cases cited in brief for Ellis.
3. On the question of double agency, see *Mining Co. v. Senter,* 26 Mich. 77.
4. As to right of agent to give plaintiff credit for premium, see *Ins. Co. v. Curtis,* 32 Mich. 402, 405; *Ins. Co. v. Montague,* 38 Id. 548; *Bodine v. Ins. Co.,* 51 N. Y. 117.

SHERWOOD, C. J. The defendant is a corporation organized under the laws of England, doing business in this State,

in the county of Allegan, at which place Hollister F. Marsh, Jr., was, in December, 1885, and 1886, its local agent. He was also such agent for the Sun Fire Insurance Company.

The plaintiff lived at Salem, in Allegan county, where he owned a store building, in which was a stock of goods, both of which were insured in the defendant company. He also owned the two dwelling-houses described in the policy in this suit.

The agent, Mr. Marsh, lived at Allegan village, some 14 miles distant from the plaintiff and his property, and was assisted in his insurance business by his son, Arthur Marsh.

The plaintiff had for several years previous to the time of issuing the policy in this suit placed his insurance with Marsh, and had given Marsh, the agent, authority to keep his property insured in such companies as Marsh might select, and to renew his policies whenever necessary for that purpose.

On December 19, 1885, Arthur Marsh was at Salem; saw Dibble, who applied to him specifically for the insurance on the dwelling-houses described in the policy in this suit. The application was verbal, and the selection of the company in which to place the insurance was left to the agent, Mr. Marsh. On the return of Arthur to Allegan, he reported the application to the agent, who, on December 21, in pursuance of such application, placed the insurance in the Sun Company, entered the same on his books of that company, and sent the policy to the plaintiff. He also reported the policy to the company, and advanced the premium given him by plaintiff. This policy contained the following clause:

"The insurance may also be terminated at any time, at the option of the society, on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy."

January 1, 1886, the Sun Company notified Marsh, the agent, to cancel the policy, which he did in the usual way, and notified the plaintiff of the fact the same day by letter, which reached Salem the next day, which was Saturday; and in the same letter Marsh notified the plaintiff he (Marsh) had put the plaintiff's insurance in another company. At that time the plaintiff was absent from his home. His clerk, however, received the letter, and opened and read it. The agent, as soon as he canceled the Sun policy, placed the risks in the defendant company, issued the policy in suit, and placed it in his safe for the plaintiff; entered the policy on his daily register of the company's business, reported it to the defendant company, accompanied by the premium, which was $3, using the returned premium from the Sun Company, advanced the balance, and charged the same to the plaintiff, who, as soon as he learned the facts, approved and ratified all Marsh had done for him in the premises.

The fire occurred, which did the damage to the buildings insured, on the Sunday evening after the policy was issued. It is for this injury the plaintiff brings this suit against the defendant under its policy.

The defendant, disavowing its liability upon the policy, on March 13, 1886, returned the premium it had received thereon to its agent, Marsh, who, under the direction of the company, tendered it back to the plaintiff, and he refused to accept the same.

If the plaintiff is entitled to recover, the amount is not disputed, nor is any question made upon the proofs of loss. The facts are substantially undisputed. The plaintiff was allowed to recover in the circuit, where a trial was had before Judge Arnold and a jury. The defendant brings error.

An inspection of the record under the exceptions taken in receiving the testimony discloses no error. The defendant's

position in regard to the policy in question is stated by its counsel as follows:

"1. The policy was never delivered.

"2. The policy in suit was intended to take the place of the Sun fire office policy, which was supposed to be canceled. The Sun fire office policy was never canceled; *ergo,* defendant's policy never took effect.

"3. Defendant's policy was issued by Marsh acting as defendant's agent, and was accepted by him acting as plaintiff's agent,—if it was ever accepted,—as it is uncontradicted and undisputed—

" *a*—That plaintiff did not know of this policy until after the fire.

" *b*—That he never ordered it to be issued.

"And we claim that a policy of insurance made by one person acting at the same time as agent for both parties thereto is void at the election of either party, unless they have full knowledge of how the same was made."

We have no doubt but that the facts shown upon the trial were sufficient to establish the delivery claimed of the policy in question to the plaintiff. The cancellation of the Sun policy was sufficiently proved, if the jury believed the testimony in the case, and their verdict is against the defendant. Under the arrangement with the agent, as stated by himself, the consent of the plaintiff to a cancellation of the policy was not necessary. The selection of the companies in which plaintiff was to have his property kept insured was placed at the discretion of the agent. The plaintiff's knowledge, or want of knowledge, upon that subject could not affect the issue in this case under the contract the plaintiff claims to have had with the agent.

While Marsh could not act for both parties in making the contract of insurance, or upon any other matters relating to the business requiring the concurrence of both parties, he could act as the custodian of the policy which was issued for the plaintiff, until he should call for it. This was a matter in which the company had no interest, and over which it had no control whatever, and, when the agent received it for the

plaintiff for that purpose, it was clearly a delivery by the company. From the day the agent received the order for the insurance until the property burned, he had the direction of the plaintiff to issue the policy, and after it was issued and delivered neither party could modify or cancel the contract without some special authority so to do from the other.

Counsel for defendant at the close of the trial requested the court to give to the jury, in its charge, four written propositions, each of which closed with a clause asking the court to direct the verdict for the defendant. This the court correctly refused to do.

Three of the requests asked the court to pass upon the facts. While they were, as we have said, based upon testimony substantially uncontradicted, still its *credibility* was for the jury, and which, to reach the conclusion assumed in the requests, the court would have to discredit. The court is never permitted to do this.

We find nothing in the exceptions to the charge as given needing consideration.

The judgment must be affirmed.

CHAMPLIN, MORSE, and LONG, JJ., concurred.