DAVID D. BUICK AND WILLIAM SHERWOOD v. THE
MECHANICS' INSURANCE COMPANY.

*Fire insurance—Broker—Authority to act for insured—Cancella-
tion of policy.*

1. Authority on the part of an insurance agent to procure insur-
ance does not imply authority to consent to cancellation, so as
to bind the insured.

2. An insurance agent who was in the habit of receiving orders
for insurance, and placing the same, for a certain percentage
of the premiums paid him by the company or insurance agency
which filled the application, and to whom a manufacturing
firm had for nine years intrusted the entire subject of their
insurance, except as to amount, secured $1,000 of insurance
for them in a Michigan company, and delivered the policy to
the insured. Fifteen days after the issuance of the policy, the
secretary of the insurance company telephoned the agent that
the company desired to cancel the policy. The agent assented,
and at once replaced the insurance in a Pennsylvania company.
The new policy was at once mailed to the insured, with a letter
informing them of the cancellation of the first policy, and
requesting its return to the agent. The letter was burned, be-
fore being opened, by the same fire which destroyed the insured
property. Thirty-seven days after the fire the agent paid the
premium on the new policy. At the time of the fire the first
policy was in the safe of the insured. They were ignorant of
this fact, until they found it, with other policies, after the
fire. No premium was ever paid on the first policy. And it
is held that the agent had authority to consent to the cancel-
lation of the first policy; citing *Insurance Co. v. Reynolds*, 36
Mich. 502, 507.[1]

3. The Michigan policy provided for cancellation upon five days'
notice. And it is held that this provision was waived by the
assent of both parties to the contract, and that such waiver
did not affect the liability of the Pennsylvania company upon
its policy.

---

[1] The question when an insurance agent can be considered the
agent of the insured is the subject of an extensive note in 20 L.
R. A. 277, with the Michigan case of *Michigan Pipe Co. v. Insur-
ance Co.*

Error to Wayne. (Hosmer, J.) Argued October 23, 1894. Decided December 18, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Shaw & Wright* (*D. J. Schuyler,* of counsel), for appellant.

*Hoyt Post,* for plaintiffs.

GRANT, J. The court made the following findings of fact and law:

"1. The Mechanics' Insurance Company, defendant herein, and the Michigan Fire & Marine Insurance Company were both authorized and doing business in the State of Michigan at the time of the occurrence hereinafter mentioned, and had agencies in the city of Detroit. Bierce & Sage were local agents of the defendant company, with authority to place insurance and issue policies in that company.

"2. F. O. Davenport is in the insurance business in the city of Detroit, receiving orders and applications for insurance from whomsoever might apply to him, placing such orders or applications with various insurance companies, among which was the Michigan Fire & Marine Insurance Company, for a certain percentage of the premium paid, which was allowed and paid him by the company or insurance agency with whom the application for insurance was placed. There was a system of debits and credits kept both by him and the companies or agencies' with whom he dealt, which were balanced on the 10th of each month. The said Davenport had entire charge of plaintiffs' insurance business continuously from the time they first went into business, a little over nine years ago. The plaintiffs were mechanics when they went into the business, green out of the factory, and knew nothing of business, especially of insurance business; and on the recommendation of Mr. Green, of the Wesson estate, they went to Mr. Davenport, and engaged him to look after their insurance. They simply notified him of the amount of insurance they wanted. They never told him what company to put it into, but he selected the companies to suit himself; and they never asked him, and never knew, what

company he was going to put it in, and never paid any attention to the companies in which their insurance was placed. The matter was left entirely to Mr. Davenport's judgment and discretion. The policies were always sent to plaintiffs. Mr. Davenport paid the premiums, and collected them of the plaintiffs afterwards. At the time of the fire, plaintiffs did not know the names of any of the companies that insured them, or what policies they had.

" 3. On or prior to the 16th day of August, 1892, said Davenport received an order from Buick & Sherwood, the plaintiffs, to place $4,000 insurance on the contents of their building in the city of Detroit, leased and occupied by them; and, in fulfillment of such order, Davenport prepared the typewritten slips describing the property to be insured, and procured the same to be insured in several companies, and, among others, procured a policy of the Michigan Fire & Marine Insurance Company for $1,000, being in form a Michigan standard fire policy, and which said Davenport afterwards delivered to the plaintiffs with the other policies for the remaining $3,000, in fulfillment of such order. The Michigan Fire & Marine Insurance Company dealt with reference to this policy only with said Davenport, and had no communication with the plaintiffs, or either of them. No premium was ever paid to it for this policy.

" 4. On or about September 1, 1892, the secretary of the Michigan Fire & Marine Insurance Company telephoned to Mr. Davenport that it desired to cancel its said policy, and for him to replace it, to which Mr. Davenport replied, 'Very well.' Within an hour, Mr. Davenport had the forms prepared, and went with them to the office of Bierce & Sage, which was in the same building as his own office, and at once replaced the said policy with the policy in suit, and later, in the same day, in response to a second telephone inquiring from the secretary of said Michigan Fire & Marine Insurance Company, notified said secretary that he had replaced their policy. It is the usual custom of insurance offices in Detroit, when requested to cancel policies which they have procured, to cancel them at once, and replace the insurance, and that custom had before been acted upon between the said Michigan Fire & Marine Insurance Company and said Davenport. Mr. Davenport had not then paid the insurance premium on said policy of said Michigan Fire & Marine Insurance Company, and none was

thereafter paid. No written or formal notice of cancellation was ever given to Davenport or plaintiffs.

"5. The policy in the suit, properly executed, was delivered to Davenport on September 1, 1892, and was the usual Michigan standard fire policy, covering and insuring the same property in the sum of $1,000 for the term of one year. It was examined and inspected by Miss Raymond, clerk in Davenport's office, and sent by her by mail to plaintiffs, the same day or the next, with a note inclosed, stating, in substance: 'I inclose the Mechanics' policy No. 402,279, for $1,000, to replace the Michigan Fire & Marine Insurance Company policy, which has been canceled. Please return the Michigan Fire & Marine policy.' It was in an envelope, having a return stamp printed on it, and was never returned. Plaintiffs, owing to pressure of other business, did not fully examine their mail received on September 3; and it lay unopened on the desk in their office, and the fire hereinafter mentioned destroyed the office and desk and all contents. Plaintiffs never received the policy, unless it was among said mail and destroyed by said fire.

"6. On the evening of Saturday, September 3, 1892, the property described in said policy was wholly destroyed by fire. Proofs of loss were prepared, and sent to Pellett & Hunter, general agents of defendant, at Chicago, Ill., and were received by them on September 22, 1892. They were not accepted by them, but were returned to plaintiffs, and were afterwards returned by plaintiffs to defendant. They were at no time accepted by defendant.

"7. On October 10, 1892, said Bierce & Sage presented a bill to said Davenport, in which the item, 'policy No. 402,279, Mechanics', Buick & Sherwood, premium, $52.50; was for the premium on the policy in suit; and the same was on that day paid by check of said Davenport.

"8. At the time of the fire, said Michigan Fire & Marine Insurance policy was in plaintiffs' safe, at their factory, but they did not know what policies they had. They found it with other policies in their safe after the fire. They had no notice or knowledge of the cancellation of that policy until after the fire, nor of the issue of the policy in suit to replace it. They delivered said Michigan Fire & Marine policy to said Davenport after a second request from him by telephone, on his assurance that the policy in suit was a just claim, some seven or eight days after the fire, and

he thereupon delivered the same to said company. The first time said Davenport saw plaintiffs after the fire, he reported to them the whole transaction of the replacing of the Michigan Fire & Marine policy with that in suit.

"9. On November 5, 1892, Mr. Bierce tendered back to plaintiffs the sum of $52.50, received by Bierce & Sage as premium on the policy in suit, and plaintiffs refused to accept the same.

"10. From the course of business between plaintiffs and Davenport, I find that Davenport was authorized to replace the Michigan Fire & Marine policy as he did, with the policy in suit, without notice to plaintiffs, and that the secretary of the Michigan Fire & Marine Insurance Company had the right, under the circumstances, to rely on Davenport's undertaking to so replace it, and his assurance that he had so replaced it.

"11. I also find that plaintiffs ratified the acts of said Davenport as soon as knowledge of the facts was communicated to them by said Davenport.

"12. The policy in suit was, at the time of the fire, a valid and subsisting policy of insurance, in favor of the plaintiffs, covering the property described in it."

The liability of the defendant depends upon the extent of the authority of plaintiffs' agent, Mr. Davenport. It is insisted by defendant that his authority was limited to procuring insurance, and that he had no authority to assent to a cancellation of a policy when once issued. It is unnecessary to cite authorities to the proposition that authority to procure insurance does not imply authority to consent to cancellation, so as to bind the insured. The court has found as a fact that Davenport had the authority to do both. An examination of the record convinces us there is evidence to sustain the finding. They intrusted the whole subject of their insurance to Davenport, and had done so for years. They did not even know in what companies they were insured. The Michigan company dealt with the broker, Davenport, alone. He assented to the cancellation, obtained the new policy now in suit to take the place of the Michigan policy, and delivered it to

the plaintiffs before the fire, with notice of the cancellation and the substitution. Plaintiffs received it, but did not open the envelope containing it, and it was consumed in the fire. No premium had been paid to the Michigan company. We think this case is clearly within *Hartford Fire Ins. Co. v. Reynolds,* 36 Mich. 502, in which it is said, at page 507:

"It is certainly not necessary to give notice to a principal who deals through a broker who is notified."

See, also, *Dibble v. Assurance Co.,* 70 Mich. 1.

The Michigan policy provided for cancellation upon five days' notice. This provision, however, can be, and in the present case was, waived by the assent of both parties to the contract. Such waiver did not affect or change the defendant's liability. If the parties to the Michigan company's policy saw fit to waive this provision, the defendant cannot question it.

Judgment affirmed.

The other Justices concurred.