HAMM REALTY COMPANY v. NEW HAMPSHIRE FIRE INSURANCE COMPANY.[1]

June 4, 1900.

Nos. 12,022—(143).

| | |
|---|---|
| 80 | 139 |
| 84 | 337 |
| 84 | 338 |
| 84 | 339 |

**Fire Insurance—Cancellation of Policy—Insurance Agency May Act as Agent of Insured.**

A general insurance agency, representing several companies, with authority to act upon applications and issue policies, as well as to cancel the same, in proper cases, may also act as the agent of the insured in waiving notice of cancellation, and in accepting a delivery of a new policy when substituted for the one cancelled.

**Same—Custom of Business.**

Such agency of the insured may be established by a long course of conduct and uninterrupted custom, without express authority being conferred either in writing or by parol.

**Same—Evidence.**

*Held*, there was evidence in this case tending to show that the agent of defendant and another insurance company, whose policy issued upon plaintiff's property had been cancelled, was authorized to waive notice of cancellation, and accept a delivery of a new and substituted policy.

**Order Dismissing Action—Findings—Practice.**

That the trial court should have made findings of law and fact in this case, in order to have disposed of the issues involved, and that an order dismissing a case can only be supported where there is no evidence sustaining the contention of the party against whom it was made.

Action in the district court for Ramsey county to recover $1,-513.45 on a fire insurance policy. The case was tried before Kelly, J., who at the close of plaintiff's testimony granted defendant's motion for a dismissal of the action. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*M. L. Countryman*, for appellant.

*Durment & Moore*, for respondent.

LOVELY, J.

This is an action brought to recover on a policy of insurance is-

[1] Reported in 83 N. W. 41.

sued by defendant company. The controversy arose over the question whether, under the evidence, the policy in question had been substituted for that of another company, and accepted by the insured, before the loss occurred. By agreement the action was tried to the court. At the close of plaintiff's evidence it was dismissed, upon motion of defendant, without findings of law or fact. A motion for a new trial was denied, and from the order denying the same plaintiff appeals to this court.

Under the proceedings in this case, we cannot go further than to inquire whether there was evidence to sustain the cause of action, as the final order of the trial court rests entirely upon the order dismissing the case. Tharalson v. Wyman, 58 Minn. 233, 59 N. W. 1009; Herrick v. Barnes, 78 Minn. 475, 81 N. W. 526. There was evidence reasonably tending to show that the plaintiff was engaged in a business that required the writing of insurance from time to time to quite an extent. That the insurance agency of J. Q. Haas & Co., of St. Paul, represented a number of insurance companies,—among them, the Sun Fire Insurance Company of New York, the German Insurance Company of Freeport, Illinois, and the defendant. That, for fifteen years previous to the transaction out of which plaintiff's claim arises, the Haas agency had carried numerous insurance risks on property owned by the plaintiff. That plaintiff had allowed the agency to place policies upon different structures, and to designate the companies, and, within an aggregate limit, the amount of the policy to be issued in each case, or to divide the amounts on any single risk between different companies, and, during the time mentioned, where policies had been withdrawn or cancelled at the request of the insuring company, the notice of such withdrawal had been acted upon by the Haas agency, instead of by the plaintiff directly, when new policies would be substituted. In such cases the plaintiff never required that any particular form of notice be given, or that any length of time be allowed for cancellation and replacement, but, where such cancellation had been requested by any insurance company, it had been the custom of the agency to write a new policy, in place of the one cancelled, in another of the companies represented by such agency; and, during the period of time named, the substitutions thus made had never

been objected to or questioned by plaintiff, but had been accepted as a matter of course. It should further be stated that the Haas agency had authority from the companies it represented to act upon applications for risks, and issue policies directly to the parties insured, or what is known as a "recording agency."

In pursuance of the usual custom in such cases, the plaintiff requested the agency to place insurance on specified property to the extent of $3,100, without indicating any company or companies in which it should be carried. The Haas agency issued two policies upon this property, for $1,550 each,—the one in the Sun Company of New York, and the other in the German Company of Freeport, Illinois. The German Company became dissatisfied with the risk, and directed its cancellation. Under the terms of the Minnesota standard policy, notices of cancellation were required to be given to the insured, with certain well-known formalities, to enable him to obtain new insurance; but the Haas agency, according to its usual custom of dealing for the plaintiff through its general manager, immediately directed the cancellation of the German policy, and ordered a new one, for the amount of the one cancelled, to be written in the defendant company on the same property. The policy in defendant's company was written as directed. Before it was placed in the actual possession of the plaintiff, the property insured was destroyed by fire; and upon the theory that the obligation in the German Company had been cancelled, and a new one issued in the defendant's company, this action was brought, and is maintained, to recover on the policy last issued.

It should be further stated that the policy so issued was not countersigned by the local agent, as required by the terms of the Minnesota standard policy, before the loss occurred. It was not the custom of the Haas agency to deliver the policies immediately to the plaintiff, where substitutions had previously been made. The usual practice had been to reserve for a time the new policy, and make the delivery and receive the cancelled policy in exchange at a later date. The agency kept an open premium account with the plaintiff; charging it generally for premiums due to the agency, rather than to the companies, crediting plaintiff's account for amounts re-

turned on withdrawals, and collecting balances due at stated intervals.

We do not think it can be doubted that if the plaintiff or any of its managing officers had been present at the Haas agency at the time when the German policy was ordered cancelled, had assented to its cancellation, and had agreed to accept the new policy in defendant company, which had been written, its action in this respect would be regarded as a legal waiver of the notice of cancellation provided for in the policy, and that the issuance of a new policy under such circumstances would have closed the transaction, and have bound defendant as completely as if every technical formality required to secure the cancellation and substitution of another policy had been carried out with all possible exactness required in such cases; and the question presented for our determination is whether the action of the Haas agency in ordering the old policy cancelled, and in writing the new one, under the facts, tended to show an acceptance of its delivery for plaintiff by such agency, and was equivalent to the direct action of the plaintiff itself, upon the theory that by long course of usage the agency was authorized in these respects to represent and act for it, and control its substantial rights, as its agent.

There is no doubt that a general insurance agency, representing a number of companies, may act as the representative of the insurer and the insured for the purposes above mentioned, or, in other words, be the agent for both parties, within the limits suggested. Ostrander, Ins. § 6; Dibble v. Northern, 70 Mich. 1, 37 N. W. 704; Buick v. Mechanics, 103 Mich. 75, 61 N. W. 337; Stone v. Franklin, 105 N. Y. 543, 12 N. E. 45; Arnfeld v. Guardian, 172 Pa. St. 605, 34 Atl. 580. Such a business arrangement is in many cases adopted by business firms and corporations in cities, and is beneficial both to the underwriters and the parties insured; adding to the business of the one, and relieving the other from anxiety regarding the expiration and replacement of risks. The long course of business usage and custom pursued in a uniform manner between the Haas agency, representing the defendant and other companies, and plaintiff, in which the latter had permitted the former to act for it, would justify a conclusion that the agency was authorized to act for the

plaintiff in waiving the notice of cancellation and in accepting the new policy of insurance, by which a delivery of such policy was accomplished as fully as if the plaintiff's manager had been present and received such policy into his own hands.

The policy issued by defendant was fully written, and the formal omission of the agent to countersign the same was not, providing it had been accepted within the legal intent of both parties, essential to its validity. Our conclusion is that the trial judge should have denied the motion to dismiss the action, proceeded with the trial of the case, and determined the same on its merits, making findings as in other cases.

Order reversed, and a new trial granted.