G. L. WARREN v. FRANKLIN FIRE INSURANCE COMPANY, Appellant, and PENNSYLVANIA FIRE INSURANCE CO., G. L. WARREN, Appellant, v. PENNSYLVANIA FIRE INSURANCE Co. and FRANKLIN FIRE INSURANCE Co., Appellant.

Insurance: AGENCY: DELIVERY OF POLICY. Where a property owner, who had experienced difficulty in keeping his property insured, arranged with an agent to re-insure him upon the expiration or cancellation of any policy, the authority thus given the agent was not in conflict with his duty to the companies he represented; and the delivery of a new policy to the agent to take the place of one that had been cancelled, was sufficient delivery to the owner of the property to render the contract enforcable, notwithstanding the statutory provision contained in the policy that upon cancellation at the instance of the company the insured shall be given five days notice, as such notice is for the benefit of the insured and subject to waiver by him, and was waived when he made the insurance agent his agent with authority to re-insure.

*Appeal from Mahaska District Court.*—HON. B. W. PRESTON, Judge.

THURSDAY, OCTOBER 23, 1913.

SEPARATE actions against the Pennsylvania Fire Insurance Company and the Franklin Fire Insurance Company were tried together. Verdict was directed in favor of the former and against the latter and judgments entered accordingly. The Franklin Fire Insurance Company appeals from judgment against it and plaintiff from that in favor of the Pennsylvania Fire Insurance Company.—*Affirmed.*

*C. C. Orvis,* for G. L. Warren.

*Burrell & Devitt,* and *Thomas Bates,* for Pennsylvania Fire Ins. Co.

*John F. & Wm. R. Lacy,* for Franklin Fire Insurance Company.

LADD, J.—The plaintiff operated a grocery with meat market at Buxton. He had procured a policy of insurance on his stock and fixtures issued by the Home Insurance Company, which it subsequently canceled. Thereupon the agent, O'Hara, at the instance of the insured, issued a like policy of the Pennsylvania Fire Insurance Company. It was delivered February 12th, and on the 21st of the same month the company telegraphed its agent to cancel the policy and also wrote the agent to do so. On the 23d O'Hara arranged with Carl Johnson, an agent for twelve companies, to issue a policy of one of them covering the property, and on the same day Johnson delivered to O'Hara a policy of the Franklin Fire Insurance Company covering the stock and fixtures and the latter mailed it to the insured but it did not reach him until the 26th. The property was destroyed by fire February 25, 1912. The insured notified both companies thereof and served each with proofs of loss. Upon failure to pay the loss, action was begun against each. Issues were joined and the actions tried together. That one company or the other is liable for the loss, stipulated to have been $449.61, is conceded; the ultimate issue being which one. If the policy of the Pennsylvania Fire Insurance Company had been canceled before the fire, the Franklin Fire Insurance Company must pay the loss; if it was in force at that time, then the Pennsylvania Fire Insurance Company is liable therefor.

It appears that the insured had experienced some difficulty in keeping his property insured and had arranged with O'Hara to reinsure upon the expiration of policies and, in event any policy was canceled, to insure in another company. In view of this authority, handing to him the policy of the Franklin Fire Insurance Company by its agent was a sufficient delivery. "This was a matter in which the company had no interest and over which it had no control whatever, and, when the agent received it for the plaintiff for that purpose, it was clearly a delivery by the company" (*Dibble v. Assurance Co.*, 70 Mich. 1 (37 N. W. 704, 14 Am. St. Rep.

470), and, as we think, effected the cancellation of the policy of the Pennsylvania Fire Insurance Company. It stipulated, as required by section 1758-b, Code Supplement, that: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation either by registered letter directed to the insured at his last known address, or by personal written notice." The next section denounces a penalty against any company and the officers and agents of any who shall violate the law specifying what shall be included and what excluded from an insurance policy. Though it would have been unlawful for the company to have omitted this provision (section 1758-c, Code Supp.), we know of no ground on which the insured may be denied the right to consent to the cancellation of a policy without notice or to waive the service of notice in the manner prescribed. This would seem necessarily to follow from privilege of canceling accorded the assured. The design of this provision is to prescribe a method to be pursued to effect cancellation by either party independent of the other and not to deny to either the right to withdraw from the contract by mutual consent. The mischief sought to be remedied was that resulting from terminating the policy without according the assured ample time within which to negotiate for other insurance in its stead. The service of notice in the manner prescribed is for the benefit of the insured and, like all provisions of this kind, may be waived by the party in whose interest enacted. Had the plaintiff been advised personally of the instruction of the company to cancel the policy, there can be no doubt but that he might have consented thereto or have waived notice. Certainly there is nothing in the statute to prevent such a course, and if the Legislature intended to deny to the insured the right to waive the provisions therein, enacted for his benefit, as is contended by appellant, this does not appear from the language of the statute, of which the excerpt from the policy is a copy. And what the insured might do in the way of waiving notice or con-

senting to cancellation he could authorize another to do for him. He was not informed of what had transpired in the matter of canceling one policy but had directed O'Hara to procure a policy in another company upon cancellation of any outstanding, and the agent undertaking to do so was not inconsistent with any duty he owed the companies for which he was agent. The services to be rendered by him for the companies in no manner conflicted with those undertaken for the insured. Upon receiving instruction to cancel the policy of the Pennsylvania Fire Insurance Company, ordinarily he must have caused the statutory notice to be served on the insured, but this the latter had waived in advance by directing him to reinsure in another company, and upon this being done the cancellation became as effective as though notice had been served. Not only were his employments not inconsistent with the performance of his duty toward each but they were in harmony and well adapted to the accomplishment of the design of each, for no act of his essential therefor exacted the concurrence of both parties.

The same question was before the Supreme Court of Minnesota in *Hamm Realty Co. v. New Hampshire Fire Ins. Co.*, 80 Minn. 139 (83 N. W. 41), the only difference being that the authority of the agent was established by long custom and usage in that case, and the court, speaking through Lovely, J., said:

There is no doubt that a general insurance agency, representing a number of companies, may act as the representative of the insurer and the insured for the purpose above mentioned, or, in other words, be the agent for both parties, within the limits suggested. Ostr. Ins. S. 6; *Dibble v. Assurance Co.*, 70 Mich. 1, (37 N. W. 704, 14 Am. St. Rep. 470); *Buick v. Mechanics' Ins. Co.*. 103 Mich. 75, (61 N. W. 337); *Stone v. Franklin Fire Ins. Co.*, 105 N. Y. 543, (12 N. E. 45); *Arnfeld v. Assurance Co.*, 172 Pa. 605, (34 Atl. 580). Such a business arrangement is in many cases adopted by business firms and corporations in cities and is beneficial both to the underwriters and the parties insured, adding to the business

of one and relieving the other from anxiety regarding the expiration and replacement of risks. The long course of business usage and custom pursued in a uniform manner between the Haas agency, representing the defendant and other companies, and plaintiff, in which the latter had permitted the former to act for it, would justify a conclusion that the agency was authorized to act for the plaintiff in waiving the notice of cancellation and in accepting the new policy of insurance, by which a delivery of such policy was accomplished as fully as if the plaintiff's manager had been present and received such policy into his own hands.

In *Buick v. Mechanics' Ins. Co.,* 103 Mich. 75 (61 N. W. 337), the Michigan Fire & Marine Insurance Company directed its agent, Davenport, to cancel its policy covering plaintiff's property, and he immediately procured a policy from the agent of the Mechanics' Insurance Company and mailed it to the insured. A fire occurred before the latter had notice of the change and in an action on the last policy the court said:

The liability of the defendant depends upon the extent of the authority of plaintiff's agent, Mr. Davenport. It is insisted by defendant that his authority was limited to procuring insurance, and that he had no authority to assent to a cancellation of a policy when once issued. It is unnecessary to cite authorities to the proposition that authority to procure insurance does not imply authority to consent to cancellation, so as to bind the insured. The court has found as a fact that Davenport had the authority to do both. An examination of the record convinces us there is evidence to sustain the finding. They intrusted the whole subject of their insurance to Davenport and had done so for years. . . . He assented to the cancellation, obtained the new policy now in suit to take the place of the Michigan policy, and delivered it to the plaintiffs before the fire, with notice of the cancellation and the substitution. Plaintiffs received it but did not open the envelope containing it, and it was consumed in the fire. . . . We think this case is clearly within *Insurance Co. v. Reynolds,* 36 Mich. 502, in which it is said, at page 507: 'It is certainly not necessary to give notice to a principal who deals through

a broker who is notified.' . . . The Michigan policy provided for cancellation upon five days' notice. This provision, however, can be, and in the present case was, waived by the assent of both parties to the contract. Such waiver did not affect or change the defendant's liability. If the parties to the Michigan Company's policy saw fit to waive this provision, the defendant cannot question it. (See, also. *Huggins Cracker & Candy Co. v. People's Insurance Co.*, 41 Mo. App. 530).

It was said in *Waterloo Lumber Co. v. Des Moines Insurance Co.*, 158 Iowa, 563 that "the insured could of course authorize the agents to act for him in receiving notice of cancellation and in procuring other insurance in case his policy was thereafter canceled." No authority to the contrary is cited in appellant's brief and none has been discovered by us and we reach the conclusion, based on reason and authority, that the insured, notwithstanding the provisions of the statute exacting a standard policy, may waive service of notice or consent to the cancellation of a policy, that this may be done in advance by authorizing the agent of the company issuing same to insure his property in another company upon being required by the insurance company to cancel, and, that in so doing, his act in no wise conflicts with his duty to the company of which he is agent, and that in this case the policy of the Pennsylvania Fire Insurance Company was effectually canceled by the procurement of the policy of the Franklin Fire Insurance Company as directed by the insured. While appellant's brief covers a wide range, the questions determined are decisive and others need not be considered.

The judgments are *Affirmed.*

WEAVER, C. J., and EVANS and GAYNOR, JJ., concur.