## LUMBERMEN'S MUT. INS. CO. v. SLIDE RULE & SCALE ENGINEERING CO.

## SLIDE RULE & SCALE ENGINEERING CO. et al .v. FIREMEN'S FUND INS. CO. et al.

### No. 848.

District Court, S. D. Illinois, S. D.

Sept. 2, 1948.

Gillespie, Burke & Gillespie, by Louis F. Gillespie and Frank W. Young, all of Springfield, Ill., for original plaintiff.

Carl Lambach, of Davenport, Iowa, and Marks Alexander, of Springfield, Ill., for original defendant and third-party plaintiffs.

Gillespie, Burke & Gillespie and Frank W. Young, all of Springfield, Ill., and McKinney, Hough & Carlson, of Chicago, Ill., Barber & Barber, of Springfield, Ill., Myers & Snerly, of Chicago, Ill., Giffin, Winning, Lindner, Newkirk & Jones, of Springfield, Ill., Brown, Hay & Stephens, by Paul W. Gordon, all of Springfield, Ill., and Putnam, Putnam & Putnam, of Des Moines, Iowa, for third-party defendants.

BRIGGLE, District Judge.

The important and in some respects novel legal questions to be resolved in this proceeding stem from the following facts:

Slide Rule and Scale Engineering Company is an Illinois corporation engaged in the manufacturing business with its principal place of business in the City of Mt. Olive, Macoupin County, Illinois. General Credit Corporation is an Indiana corporation engaged in general financing operations and licensed to do business in Illinois. At all pertinent times here involved General Credit was engaged in financing various operations of the Slide Rule and Scale Manufacturing Company, and by reason thereof had an insurable interest in the property of Slide Rule.

The original plaintiff, Lumbermen's Mutual Insurance Company, the third party defendants, Firemen's Fund Insurance Company, Citizens Insurance Company of New Jersey, and Iowa Mutual Insurance Company, are foreign corporations, licensed to do business in Illinois, and engaged in writing policies of fire insurance; and the Illinois Mutual Insurance Company, third party defendant, is an Illinois corporation, engaged in the same business. One Edward Collins is a general insurance agent residing in the City of Gillespie, Macoupin County, Illinois, and was the agent for and representative of each of said insurance companies. As such insurance agent, he had previously written policies of fire, workmen's compensation and liability insurance for Slide Rule, in fact handled all of their insurance requirements. He had at different times prior to December 27, 1946, solicited from the officers of Slide Rule a new type of fire insurance policy covering their inventory of raw materials, materials in

process of manufacture and finished products, sometimes called inventory insurance. On December 27, 1946, the officers of Slide Rule called Collins on the telephone and a conversation ensued with the officers of both third party plaintiffs (Slide Rule and General Credit Corporation), who were then at the offices of Slide Rule in Mt. Olive. W. A. Anderson, president of General Credit, told Collins that they, the third party plaintiffs, desired such inventory insurance and that he would send him a letter concerning its terms. Accordingly on January 10, 1947, he sent a letter to Collins, asking him to cover immediately on a monthly basis the insurance talked about in the telephone conversation of December 27, which letter is set forth in full in footnote.[1] While Collins had on other occasions discussed with third party plaintiffs the companies that he (Collins) represented there was no specific direction by third party plaintiffs that this insurance be placed in any specific company, and neither was there any indication by Collins as to which company would carry the risk. Collins was himself a licensed insurance agent and broker under the laws of the State of Illinois, and associated with him in the Collins Agency was his wife, Eleanor Collins.

Upon receiving the letter from Anderson, Collins on January 14, 1947, sent the following letter to Illinois Mutual:

"Gentlemen:

"Please bind $75000 fire and extended coverage on Slide Rule and Scale Manufacturing Company stock. The policy is to be issued on a monthly report basis to cover the inventory. A detailed application will follow. Keep covered."

On January 15, 1947, the Illinois Mutual wired Collins that they could not accept the risk, and on the same date wrote Collins a confirmatory letter, advising that this was a class of risk they did not write.

Following receipt of this wire, Collins under date of January 15, 1947, wrote Lumbermen's to "please bind, effective 12 o'clock noon, January 15, 1947, $75,000.00 insurance on the Slide Rule, etc., to cover their inventory of goods in process, raw material, and finished slide rules. * * *" On January 17th, Lumbermen's replied to Collins that they had on account of the rather hazardous nature of Slide Rule's operations and for other reasons decided that they should not accept any additional liability on Slide Rule. (It appears that Lumbermen's already had issued fire contracts covering other property of Slide Rule.) Upon receipt of this communication from Lumbermen's, Collins again wrote them on January 18, urging them to take $25,000 of the contemplated risk of $75,000, and asking them to please keep that amount bound until they notified him to the contrary. Lumbermen's replied to this letter on January 20, again declining the risk for substantially the same reasons theretofore assigned.

On January 18, 1947, Collins wrote Firemen's Fund, as follows: "Please bind, effective 12 o'clock noon, January 18, 1947,

---

[1] January 10, 1947

Collins Insurance Company
Gillespie, Illinois
    Attention of Mr. Collins:
Dear Sir:

I called you when I was at the Slide Rule's office in Mt. Olive the 26th or 27th of December, about increasing the insurance.

In going into this matter in detail as to valuation there, the amount of insurance they are carrying is completely out of line with the amount of stock they have and the amount of loans we are carrying against this stock. There should be at least $75,000. of insurance on the merchandise in this plant, as an inventory taken will indicate more merchandise in process and completed than the above amount.

Will you therefore please cover this immediately on the monthly basis we talked about over the telephone. In case these monthly payments are not paid promptly, will you notify us and we will see that remittance comes from this office to cover same. We will charge it to their account here.

Will you kindly see that loss payable clauses on machinery and equipment insurance, as well as the merchandise insurance is made to the General Credit Corporation. These policies should be sent here, as we are carrying both the machinery, equipment and inventory loans.

What did you find out about the sprinkler system proposition we talked about?
    Yours very truly,
        W. A. Anderson
        President

$25,000 insurance on the Slide Rule, etc., to cover their inventory of goods in process, raw material and finished slide rules * * *. This is to be on the monthly reporting basis. The reason I am sending this binder to you is that I do not have the forms here in our office to write this policy correctly. There is to be a total amount of insurance written of $75,000. We are giving you ⅓ * * *." On January 20, Firemen's Fund wired Collins that they preferred to decline the risk account of the class.

On January 28, 1947, Collins wrote Mr. Royster, a special agent for Citizens, advising him that he was sending him $25,000 on a factory at Mt. Olive. This was followed by another letter from Collins to Royster on January 30th, enclosing an unsigned application form for $25,000 on the risk in question, giving the name of the insured, the description of the building and the type of insurance and the amount of $25,000. On February 1, Mr. Royster replied to Mr. Collins, as follows:

"Thanks very much for your application for $25,000 on a reporting form for the above assured. I immediately got in touch with the Chicago office and have now received their reply that 625 E. 5th Street, Mount Olive is shown to be a frame building in the name of Nieman Brothers manufacturers of poultry supplies and is rated as such. We are also unable to locate anything regarding the Slide and Scale Manufacturing Company and I am therefore holding up issuing a policy until I visit you next Saturday and make an inspection of the above porperty. In the meantime I am writing the Chicago office to bind $25,000."

The discrepancy in ownership referred to in the letter was due to recent transfers and is of no significance in our present controversy.

Royster thinks that on the following Tuesday, February 4, he phoned Collins from St. Louis that Citizens would decline the risk, but Collins states that he has no recollection of such a call or such a conversation and that his first advice as to Citizens unwillingness to accept the risk came when Royster called at his office on Saturday, February 8. Whether Royster called Collins on February 4 or not is probably of no importance as it is not contended that any information was ever conveyed to third party plaintiffs or either of them of Citizens desire not to carry the risk. On Saturday morning, February 8, Royster came to Collins' office in Gillespie and told him that they had inspected the plant at Mt. Olive and that they should get off the risk.

Effective January 30, 1947, Iowa Mutual issued its policy for $25,000, covering the inventory in question. The property in question was consumed by fire on the evening of February 8, 1947, with a resultant loss to the third party plaintiffs of the sum of $74,574.05, the amount of loss being stipulated by all parties concerned. Iowa Mutual concedes a valid insurance contract on its part and concedes liability for its pro rata share of the loss. All other insurance companies deny liability.

It is not in dispute but that Collins was the agent for all the fire insurance companies involved with the scope of his express authority in each instance resting upon his contract with the company. In his agency contract with the Illinois Mutual he was appointed agent for the purpose of soliciting applications for insurance, the company agreeing to pay a commission on all accepted risks—he was not furnished with insurance policies of the Illinois Mutual and did not actually issue the insurance contracts from his office.

In his agency agreement with Lumbermen's Collins was not only authorized to solicit insurance but in most cases he actually issued the contracts of insurance from his own office. This agreement provided that the company authorized the agent to issue and countersign the policies of the company. The agency agreement also provided that a true report of each binder, policy, endorsement or certificate issued, should be mailed to the company on the day of its execution or before the date on which the insurance is effective. It further provided that all issuance of binders and policies should be in accordance with the manuals or written and printed instructions of the company furnished to the agent. Collins was also supplied with forms of insurance

policies by both Firemen's and Citizens and given authority to issue such contracts of insurance from his own office. The agency agreement with both of such last mentioned companies provided that the agent should have full power and authority to receive and accept proposals for insurance covering such classes of risks as the company may from time to time authorize; to collect and receipt for premiums on insurance and to retain his commissions therefrom.

Collins did not at any time after receiving the order for the insurance in question and prior to the loss communicate with either of third party plaintiffs in reference to his activities with the various insurance companies; he did not communicate to them any attempted cancellations or the positions taken by any of the other companies in reference to the insurance. Neither did his principals communicate with third party plaintiffs in reference thereto.

This proceeding was begun by Lumbermen's filing a suit against Slide Rule, asking for a declaratory judgment of non-liability on their part. General Credit Corporation by leave of court intervened and with Slide Rule filed a Third Party Complaint, bringing in Firemen's Fund, Citizens, Iowa Mutual and Illinois Mutual as Third Party Defendants and asked to have the rights of all parties in connection with the attempted insurance and loss adjudicated in these proceedings.

The questions for determination are:

1. The authority of the agent Collins to bind the various insurance carriers;

2. Did he in fact bind any one or more of them, and, if so, in what amount;

3. If bound have any of them been subsequently relieved by the conduct of the parties;

4. If binding contracts for insurance existed at the date of the loss has the insured complied with the terms of such contracts so as to enable it to recover?

■ The previous business relationship between agent Collins and Slide Rule, the solicitation by him for the type of insurance here involved, the conversations with Lockhart and Anderson on December 27, 1946, the followup letter of Anderson to Collins on January 10, 1947, detailing the amount of insurance desired and other terms, the immediate actions of agent Collins in response to such letter, together with the reasonable implications that follow such facts and such conduct all point to a contract to insure the property in question for $75,000. This would follow even though Collins may not have disclosed to the insured at that time the specific company that would carry the risk. Ætna Insurance Co. v. Licking Valley Milling Co., 6 Cir., 19 F. 2d 177, and cases cited.

It is urged by the insurance carriers that Collins' communications to them amounted to no more than an inquiry as to whether they would accept the risk. A casual examination of the first letter written by Collins after receiving the communication from Anderson impels a different conclusion. This was the letter to Illinois Mutual ending with the admonition "keep covered." This letter rather clearly discloses Collins' intentions to immediately protect his customer, and to immediately bind the insurer, and if within the scope of his authority must be held to have so bound his principal. His communications to the remaining insurance carriers, while not couched in precisely the same language, were substantially to the same effect. The fact that he requested the companies to bind as of 12 o'clock noon on the date of his respective letters is an affirmative act indicating immediate protection and negatives the idea that the agent was merely making an inquiry of the companies as to whether or not they would accept the risk. This was not language denoting inquiry, but was language denoting immediate coverage.

■ This leads to a consideration of the authority of Collins to bind the various insurance companies. It is conceded that his agency contract with the Illinois Mutual was much narrower than with all the other companies. He was constituted a mere solicitor by Illinois Mutual, with no authority to accept risks or issue policies. The final acceptance or rejection rested with the company. Neither had there been any holding out by Illinois Mutual of any other or different authority of Collins than that covered by the agency contract. When the Illi-

nois Mutual therefore immediately rejected Collins effort to bind them this was a rejection of the risk and must be held to have relieved them from all liability.

In reference to all other insurance companies here involved, Collins had express authority to accept risks and issue policies and must be held to have had authority to bind all of said companies. The fact that he did not issue the policies in question is of no importance, but appears to have been for the reason of the exceptional character of the risk and the lack of knowledge on the part of the agent of the form of policy that might be desired by the carrier. His conduct in reference to all of said companies clearly discloses an intention to bind them and to protect the customer. See Lauhoff v. Automobile Ins. Co., D.C., 56 F.Supp. 493, and cases there cited by Judge Lindley. Also Milwaukee Bedding Co. v. Graebner, 182 Wis. 171, 196 N.W. 533 at 536; Elliott v. Standard Acc. Ins. Co., 92 N.H. 505, 33 A.2d 562; Rommel v. New Brunswick Fire Insurance Company, 214 Minn. 251, 8 N.W.2d 28; Ætna Ins. Co. of Hartford v. Licking Valley Milling Co., 6 Cir., 19 F.2d 177.

When Illinois Mutual declined, Collins immediately turned to Lumbermen's for the full amount of the risk—$75,000. When Lumbermen's sought to decline he urged them to accept $25,000 and about the same time wrote Firemen's Fund to bind $25,000. Attempted declination on the part of Firemen's Fund was followed by letter to one Royster, a special agent for Citizens, enclosing application for $25,000. Royster replied and after some discussion in reference to the ownership of the building in question, said, "I am writing the Chicago office to bind $25,000." Later Citizens undertook to decline by telling their agent Collins to get off the risk. The course of conduct on the part of agent Collins demonstrates, I think, from the time of the receipt of Anderson's letter, an acceptance of $75,000 insurance on the inventory of Slide Rule and a binding of the insurance carriers (except Illinois Mutual) when and as designated by him. It is to be remem-

bered that the attempted declination by the various companies was not at any time prior to the fire communicated to the insured. The limit of the insurance contracted for being $75,000, the question remains as to which carriers are now liable and in what amounts. Succinctly stated my conclusions on this question are as follows:

1. Illinois Mutual is not liable by reason of the lack of authority on the part of the agent to bind;

2. Lumbermen's was bound for $75,000, but has been relieved from liability on the doctrine of substitution, agent Collins having substituted for such liability other valid and effective insurance. Fed. Ins. Co. v. Sydeman, 82 N.H. 482, 136 A. 136; Allemania Fire Ins. Co. v. Zweng, 127 Ark. 141, 191 S.W. 903; Phoenix Ins. Co. v. State, 76 Ark. 180, 88 S.W. 917, 6 Ann.Cas. 440; Hartford Fire Ins. Co. v. McKinley, 74 Fla. 186, 77 So. 226; Todd v. German–American Ins. Co., 2 Ga.App. 789, 59 S.E. 94; Warren v. Franklin Fire Ins. Co., 161 Iowa 440, 143 N.W. 554, L.R.A. 1918 E. 477; Dibble v. Northern Assur. Co., 70 Mich. 1, 37 N.W. 704, 14 Am.St.Rep. 470; Hamm Realty Co. v. New Hampshire Fire Ins. Co., 84 Minn. 336, 87 N.W. 933; Dalton v. Norwich Union Fire Ins. Society, Tex.Com.App., 213 S.W. 230; Hollywood Lumber & Coal Company v. Dubuque Fire & Marine Ins. Co. 80 W.Va. 604, 92 S.E. 858; May v. Hartford Fire Ins. Co., 2 Cir., 297 F. 997, and cases there cited by Judge Hand.

3. Firemen's Fund, Citizens and Iowa Mutual are each bound in the amount of $25,000, for the reason that they have been substituted by Collins for Lumbermen's risk of $75,000; and are each liable for one-third of the loss of $74,574.05.

All the insurance carriers with the exception of Iowa Mutual have also raised the defense of non-compliance with the provisions of the standard form of policy in Illinois by failure to give immediate notice of the loss and by failure to file proof of loss within 60 days. I think it true, as urged by the insurance carriers that on an oral contract for insurance the

standard provisions of a policy as provided by the statute of Illinois will by implication be held to be a part of such contract. The giving of immediate notice of loss and the filing of proof of loss within 60 days are obligations thus placed upon the insured.

The evidence in this case, however, requires a finding that each of the insurance companies in question had reasonable notice of the loss and each with the exception of Iowa Mutual denied liability; that each (with the exception of Iowa Mutual) failed on request of counsel for the insured on March 18, 1947, to furnish any forms for proof of loss. It is obvious that the insurance companies from the beginning have not recognized any contractual obligation to the insured. Under such facts and under such circumstances, proof of loss would have been superfluous and will be deemed to have been waived. Buysse v. Connecticut Fire Ins. Co. 240 Ill.App. 324; West v. Franklin Fire Ins. Co., 245 Ill. App. 124; Security Ins. Co. v. Dazey, 7 Cir., 78 F.2d 537; Fray v. National Fire Ins. Co., 341 Ill. 431, 173 N.E. 479; see also Liverpool & London, etc. v. McCree, 213 Ala. 534, 105 So. 901; Meyer v. National Fire Ins. Co., 67 N.D. 77, 269 N.W. 845; Johnson v. Yorkshire Ins. Co., 224 Mich. 493, 195 N.W. 45.

To recapitulate the Court finds:

1. That Collins had authority to bind all of the insurance companies here involved except Illinois Mutual;

2. He did in fact bind Lumbermen's for $75,000, Firemen's Fund, Citizens and Iowa Mutual each for $25,000;

3. Lumbermen's has been relieved from liability on the doctrine of substitution, leaving Firemen's Fund, Citizens and Iowa Mutual to share pro rata the stipulated loss;

4. The insured has complied with the provisions of the insurance contract except in so far as they have been waived and is entitled to recover.

Counsel for third party plaintiffs may prepare separate findings of fact, conclusions of law and order, and after submitting to all other counsel present to the court for entry.