## MILLER v. AMERICAN INS. CO. OF CITY OF NEWARK, N. J., et al.

District Court, D. Minnesota, Sixth Division.
November 23, 1928.

No. 413½.

Gordon Cain, of Minneapolis, Minn., and L. A. Wilson, of Mahnomen, Minn., for plaintiff and defendant banks.

William Furst, of Minneapolis, Minn., for defendant insurance company.

JOHN B. SANBORN, District Judge. The Citizens' State Bank of Mahnomen, which is now in the hands of the commissioner of banks, and the Citizens' State Bank of Fairfax, became the owners of lots 5, 6, and 7 of block 1, and lot 5 of block 2, of the original townsite of Pinehurst, and lot 1 of block 1 in Thompson & Harty's addition to the townsite of Pinehurst, in the county of Mahnomen, Minnesota, through the foreclosure of a mortgage given by Knut Lindstrom. On April 21, 1924, or thereabouts, they sold the property to the plaintiff, Miller, under contract for a deed; he paying $100 down, the balance to be paid in installments. Under this contract, he went into possession. The contract was silent as to insurance. At the time the policy in suit was written, he had paid $1,200 on his contract. The property, situated not far from Mahnomen, consisted

of real estate and a number of buildings and their contents, used as a summer resort. The defendant insurance company had previously insured Knut Lindstrom upon the buildings and contents to the extent of $5,800; the policy expiring December, 1924.

The officers of the Mahnomen bank were Mr. Kimpel, president, and Mr. Frazer, cashier. Mr. John Gregier was bookkeeper and assistant cashier. Mr. Gregier was the duly licensed agent of the defendant insurance company. His commissions were turned over to the bank, and on the books of the defendant insurance company he was charged with net premiums on policies written, and was billed for them after 45 days. Under the laws of Minnesota, corporations cannot hold agents' licenses, so that the common practice is to have an officer or employee of a bank which desires to sell fire insurance named as agent. The policies written are signed by him, or in his name. The bank accounts for the net premiums and takes the commissions. The agent is frequently an agent in name only; policies of fire insurance are written by others in the bank and sold over its counter, much as merchandise is sold in stores. In the Mahnomen bank the insurance was largely written by Mr. Kimpel, but sometimes by Mr. Frazer. On May 11, 1925, a letter was written from the Mahnomen bank to the defendant insurance company at Newark, N. J., as follows:

"Please be advised that I am binding you on property formerly covered under policy No. 657. New report on policy will follow shortly. Please bind this for 10 days. Yours very truly, G. G. Kimpel, Agent for John Gregier."

Policy No. 657 was the $5,800 policy formerly issued to Lindstrom. Thereafter, and some time prior to June 17, 1925, Frazer wrote up the policy in suit, which is on the Minnesota standard form, is dated May 21, 1925, the expiration date of the binder, and numbered 662. It purports to cover, among other items:

"$2,000.00   On the one-story frame composition roof building situated on lot 5 of block 2 Thompson & Harty addition to the townsite of Pinehurst and occupied as a general store and dwelling.

"$2,000.00   On store furniture and fixtures including lighting plant all while contained in the above described building.

"$1,000.00   On stock of general merchandise, all while contained in the above described building."

These items, together with coverage on other buildings and contents, made up a total coverage of $12,100. The plaintiff was named as the insured, and there was attached to the policy a mortgage clause, making the loss payable to the two banks above referred to, as mortgagees, as their interest might appear. The countersignature provision and the signature is as follows:

"This policy shall not be valid unless countersigned by the duly authorized agent of the company at Mahnomen, Minnesota. Date May 21st, 1925. Countersigned: John Gregier [typewritten] Agent, by H. S. Frazer [handwriting]."

The daily report was sent in to the General Inspection Company, of Minneapolis, the rating bureau of which the defendant insurance company was a subscriber. The bureau received it June 17, 1925. The report contained the form of coverage, the mortgage clause, and carried the name in handwriting of "John Gregier," with the initial "F" underneath it. It was checked as to classification and as to rate of premium, and was then sent to the defendant insurance company at its Western office at Rockford, Ill. From there it was sent to Mr. Doering, a special agent of the defendant insurance company at New Ulm, Minn., to determine whether the company should remain upon the risk. He received it on July 25, 1925, and immediately by letter notified Mr. Gregier to cancel the policy. In the ordinary course of the mails this letter would be received not later than the 27th. The order of cancellation was confirmed by a letter of the 29th of July from the defendant insurance company at Rockford. Mr. Kimpel brought the policy, which had at all times remained in the possession of the bank, to Mr. Gregier, and told him to write the word "Canceled" on it and to send it in to the company. Mr. Gregier wrote, "Canceled. J. G."—on the policy and inclosed it in an envelope, with a letter addressed to "Mr. H. E. Doering, Special Agent, American Insurance Company, New Ulm, Minnesota," dated July 31, 1925, which is as follows:

"In compliance with your request of July 25th we return herewith the Ernest E. Miller fire policy No. 662 for cancellation. We would like to have you advise us confidentially and in detail, why this procedure."

This letter inclosing the policy was mailed, and Mr. Doering on August 3d acknowledged receipt of the policy for cancellation. No notice of cancellation was served on Miller or on the banks. On August 8, 1925, the store building and its contents—the items covered

to the extent of $5,000 by the policy in question—were destroyed by fire, and the defendant insurance company was notified at Newark, N. J., by telegram. On August 12th, the Rockford office wrote Mr. Gregier that he had been instructed to cancel and had sent in the policy. On August 13th, Mr. Doering wrote to the same effect, and told Mr. Gregier to report losses to Rockford, and not to Newark. On August 14th, Gregier wrote the defendant insurance company at Rockford that the policy was sent to Doering for cancellation, that no notice of cancellation was given to Miller or the banks, as required, and that payment must be made. A loss report was made out, which reached Rockford, Ill., on August 31, 1925. Proofs of loss were furnished the insurance company.

On August 26, 1925, nearly 20 days after the loss, Gregier was billed by the company for $152.89, "June, To Balance per Account Current." At the bottom of the bill appears, "Above we hand you statement of balances as shown by our ledger. Please compare with your account, and if found correct favor us with remittance."

On August 29, 1925, the Mahnomen bank remitted $152.89. On October 17, 1925, the defendant insurance company sent to John Gregier its draft for $152.94, with a letter stating:

"We inclose herewith our draft for $152.-94, which is a return to you of the amount of premium you sent us for policy No. 662—Ernest E. Miller. You sent us this premium after the order to you of the cancellation of the policy."

On October 23, 1925, Gregier wrote, returning the draft with the statement that his reason for so doing was because E. E. Miller refused to accept the money, which he had tendered to him. On October 26th, the draft was returned to Gregier, with a letter advising him that it had not been sent to be tendered to Miller, but was sent to Gregier, because he had paid the premium after cancellation of the policy. Miller had never paid any premium, and, so far as the evidence showed, had never been charged with any premium by Gregier, by the bank, or by the defendant insurance company.

■ The defendant insurance company denied liability. Suit was brought on the policy. An agreement was entered into between the plaintiff and the banks as to a division of the recovery, if plaintiff prevailed. The store was not on lot 5 of block 2 of Thompson & Harty addition to Pinehurst, as stated in the policy, but was on lot 5 of block 2 of the original townsite of Pinehurst, and ref-

ormation of the policy to that extent was asked. The defendant insurance company claims that it cannot be reformed, but in this regard it is clearly mistaken. There was not the slightest question whatever as to the property which was intended to be covered by the persons who wrote the policy. The store building was the only store in Pinehurst, and the contract of insurance, if it covers anything at all, covers this property.

■ The defendant insurance company says that there never was any contract of insurance, because no one capable of contracting for the defendant insurance company ever dealt with the plaintiff relative to insurance. John Gregier upon the trial testified that he knew about this property and knew that the policy was being written at the time it was written. Mr. Frazer says he wrote the policy on a typewriter in the bank close to Gregier; that he called Gregier's attention to it at the time, and Gregier told him to sign it for him. Gregier, on cross-examination, denied that after the loss he had stated to the agents and attorney for the company that he knew nothing about the policy or the property at the time the policy was written. There was credible testimony that he did make such a statement.

With all due respect to Mr. Frazer and Mr. Gregier, I am satisfied that Frazer wrote up this policy himself, without discussing it with Gregier, and signed Gregier's name to it without consulting him, and that the business of writing policies in that bank was frequently done in that way. I am also satisfied that Gregier would have signed the policy, had it been presented to him for signature. He was a subordinate employee of the bank, and was not selected by the bank or by the insurance company with any idea that he was peculiarly fitted to write insurance, but merely because some one had to be designated to act as agent in order to enable the bank to write fire insurance policies for its customers.

It is probably not important whether Gregier knew of the policy at the time it was written or not. If he had authority to write it originally, he had the power to ratify and adopt it when he learned of it, and it seems to me that that is what he did when he sent it in for cancellation, when thereafter he notified the company of the losses, and did all the other acts which the evidence shows that he did to preserve, destroy, or resuscitate the policy. Counsel for the defendant insurance company seems to feel that, unless a policy is free from irregularities at its inception, such irregularities as exist can only be waived

by a fire insurance company at its home office. I see no reason why Gregier could not ratify or adopt any policy that he could make in the first instance.

Counsel for the defendant insurance company claims that, if it can be held that Gregier wrote this policy, he was in effect insuring property that he was interested in, and that therefore the policy would not be valid until the company accepted the risk. There is no merit in this contention. This suit is brought by Miller. Gregier had no interest in Miller's property. Miller had the same right to apply to Gregier for insurance as any other customer of the bank would have.

There are, however, two reasons why Miller cannot recover upon this policy. The first is that he never had any contract with the defendant insurance company. His negotiations were with Kimpel and Frazer. He says he told Kimpel to write about the same amount of insurance as had previously been carried upon this property. He designated no company, nor the amount of coverage on the various items. He said at first that he had had notice of the expiration of the Knut Lindstrom policy; that it had been assigned to him and paid for by him, when he bought the property. Afterwards he stated that he had not received any notice of expiration of the Lindstrom policy at the time he spoke to Mr. Kimpel about insurance. He says he saw the policy in suit after it was written, but did not read it, and told the bank to keep it for him. He paid no premium, was charged with none, and never had the policy in his possession. By his own testimony it appears that it was not the policy which he ordered; that is, unless it can be said that a $12,100 policy is about the same as a $5,800 policy. It seems to me that Mr. Miller, if suit had been brought against him for recovery of the premium, had an absolute defense. He negotiated for no such contract as the bank procured for him. I believe that what actually happened was that, without consulting either Miller or Gregier, Frazer and Kimpel had this policy written up for the purpose of protecting the bank's interest in this property, and decided to designate Miller as the insured, instead of the bank.

But, even if I am mistaken, and it can be said that this policy was in effect at the time Gregier received orders to cancel it, I am satisfied that it was not in effect on August 8th, at the time the loss occurred. Miller testified that the bank was his agent in insurance matters. If it had sufficient authority to place $12,100 of insurance on this property when Miller had ordered about the same amount as had previously been carried, it had authority to accept cancellation of the policy. It makes no difference whether it had authority to agree to cancellation, or whether it merely had the right to accept notice of cancellation. It received orders to cancel the policy not later than July 27th, and the 10 days would have expired prior to the loss. My opinion is that, when Mr. Kimpel, the president of the bank, brought the policy to Gregier and told him to mark it "Canceled" and send it to the company, that terminated the policy.

In the case of Hamm Realty Co. v. New Hampshire Fire Ins. Co., 80 Minn. 139, 142, 83 N. W. 41, 42, the Supreme Court of Minnesota said:

"There is no doubt that a general insurance agency, representing a number of companies, may act as the representative of the insurer and the insured for the purposes above mentioned, or, in other words, be the agent for both parties, within the limits suggested. Ostrander, Ins. § 6; Dibble v. Northern, 70 Mich. 1, 37 N. W. 704 [14 Am. St. Rep. 470]; Buick v. Mechanics, 103 Mich. 75, 61 N. W. 337; Stone v. Franklin, 105 N. Y. 543, 12 N. E. 45; Arnfeld v. Guardian, 172 Pa. 605, 34 A. 580."

See, also, on the question of cancellation by mutual consent, Miller v. Continental Ins. Co. of New York, 157 Minn. 489, 196 N. W. 651; Bemidji Iron Works Co. v. Agricultural Ins. Co., 148 Minn. 193, 181 N. W. 340.

The evidence is insufficient to show that any contract of insurance existed between Miller and the defendant insurance company on the 8th day of August, 1925.

The defendant insurance company may have a judgment and decree of dismissal, with costs.